1  Neel Chatterjee (SBN 173985)
   *nchatterjee@goodwinlaw.com*
2  Luc Dahlin (SBN 305732)
   *ldahlin@goodwinlaw.com*
3  **GOODWIN PROCTER LLP**
   601 Marshall Street
4  Redwood City, CA 94063
   Tel.: +1 650 752 3100
5  Fax.: +1 650 853 1038

6  Attorneys for Defendant

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10                              **SAN JOSE DIVISION**

11 | POYNT CORPORATION, | Case No. 5:18-cv-05814-BLF |
12 | Plaintiff, | **DEFENDANT INNOWI, INC.'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)** |
13 | v. | |
14 | INNOWI, INC., | Date:        February 14, 2019 |
15 | Defendant. | Time:        9:00 a.m.<br>Courtroom:   3, 5th Floor<br>Judge:       Hon. Beth L. Freeman |

16

17

18           **REDACTED PUBLIC VERSION OF DOCUMENT SOUGHT TO BE SEALED**

19

20

21

22

23

24

25

26

27

28

ACTIVE/97375498.2

| MOTION TO DISMISS | CASE NO. 5:18-CV-05814 |

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARD ..................................................................................................... 1

III. ARGUMENT .................................................................................................................. 2

    A.    The Claim for Breach of the Non-Disclosure Agreement Should Be Dismissed ............................................................................................................. 2

        1.    Complaint Does Not Allege Innowi Was A Party To The NDA ................ 3

        2.    Complaint Fails To Allege Sufficient Facts To Support Finding That Innowi Is Alter-Ego of Whizz ...................................................................... 3

        3.    NDA Is Non-Assignable ............................................................................. 4

    B.    The Claim for Breach of the Agreement Should Be Dismissed ............................. 5

        1.    No Plausible Allegations That Innowi Patents Were Derived From Work Performed Under The Agreement ..................................................... 5

        2.    The Agreement Is Unenforceable ............................................................... 6

        3.    No Obligations To Transfer IP Accrued After Poynt Alleges They Terminated The Agreement ........................................................................ 8

    C.    Count for Misappropriation of Trade Secrets Should Be Dismissed ...................... 9

        1.    Innowi Had No Duty To Maintain Secrecy of Poynt Information............ 10

        2.    Complaint Does Not Sufficiently Allege What Trade Secrets Were Misappropriated ........................................................................................ 12

IV. CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Albin v. Trustmark Ins. Co.*,
    No. CV 13-5788 PSG (AGR), 2013 WL 12191722 (C.D. Cal. Nov. 25, 2013)............10, 12, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................................1

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010).............................................................................................2, 4

*di Grazia v. Sazerac Co., Inc.*,
    No. C 08-01562 JW, 2008 WL 11388684 (N.D. Cal. Dec. 16, 2008) .........................................2

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008)................................................................................................2

*Neilson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003)..................................................................................4

*Petrus v. New York Life Ins. Co.*,
    No. 14-CV-2268 BAS JMA, 2015 WL 3796221 (S.D. Cal. June 18, 2015) ..............................9

*Sourceprose Corp. v. RPX Corp.*,
    No. 16-CV-04089-LB, 2017 WL 1806496 (N.D. Cal. May 5, 2017)........................................2

*U.P.S., Inc. v. Benz*,
    No. C95 1900 VRW, 1996 WL 931997 (N.D. Cal. Mar. 1, 1996) .........................................6, 7

*Western Mining Council v. Watt*,
    643 F.2d 618 (9th Cir.1981)...............................................................................................2, 6

**California Cases**

*Asmus v. Pac. Bell*,
    23 Cal. 4th 1, 999 P.2d 71 (2000) ......................................................................................7, 8

*Diodes, Inc. v. Franzen*,
    260 Cal. App. 2d 244 (Ct. App. 1968) ..............................................................................9, 12

*Harris v. TAP Worldwide, LLC*,
    248 Cal. App. 4th 373 (2016).................................................................................................7

*McCarther v. Pac. Telesis Grp.*,
    48 Cal. 4th 104 (2010) ...................................................................................................... 9

*Merrill v. Cont'l Assur. Co.*,
    200 Cal. App. 2d 663 (1962) ............................................................................................ 9

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*,
    100 Cal. App. 4th 44 (2002) ............................................................................................. 7

*Wood v. Elling Corp.*,
    20 Cal. 3d 353 (1977) ....................................................................................................... 3

**California Statutes**

California Uniform Trade Secrets ACT ..................................................................................... 2

Defend Trade Secrets Act ........................................................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 10(c) ................................................................................................................... 2

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 1

I.  **INTRODUCTION**

Defendant Innowi, Inc. ("Innowi") hereby moves the Court to dismiss plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because plaintiff has failed to plead sufficient plausible facts to state a claim.  Plaintiff has asserted claims that Innowi breached a Non-Disclosure Agreement ("NDA"), breached a Development Agreement ("Agreement"), or misappropriated plaintiff's alleged trade secrets.  All of these claims should be dismissed.

The key facts alleged in the Complaint, taken as true for the purposes of this motion, are as follows: (1) Poynt signed a NDA with Whizz *but not Innowi* (Complaint ¶ 13); (2) Poynt signed the Agreement with Whizz and Innowi (Complaint ¶ 14); (3) Poynt "terminate[d]" the Agreement in December 2014 (Complaint ¶ 24); and (4) Innowi filed a patent application in September 2015 (and two more in 2017) (Complaint ¶¶ 28-29).  These factual allegations fail to support any viable claims and all counts should therefore be dismissed.

The first count alleged breach of the NDA.  The count should be dismissed because Innowi is not a party to the NDA and has no obligations under the NDA.

The second count alleging breach of the Agreement should be dismissed because: (1) Poynt has not plausibly alleged any breach by Innowi, (2) the Agreement is unenforceable, and (3) Innowi did not have any obligation to assign intellectual property to Poynt that arose after Poynt terminated the Agreement.

The third and fourth counts, alleging misappropriation of trade secrets, should be dismissed because: (1) the Poynt "information" does not constitute trade secrets where it was not kept confidential, (2) Poynt has not identified any independent economic value derived from the secrecy of any Poynt "information"; and (3) the Complaint fails to identify the alleged trade secrets with the required specificity.

II.  **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, the Court "accept[s] factual allegations in the complaint as

1   true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*

2   *v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, legal

3   conclusions need not be taken as true merely because they are cast in the form of factual

4   allegations.  *See Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

5   Rule 10(c) provides "[a] copy of any written instrument which is an exhibit to a pleading is

6   a part thereof for all purposes." Fed.R.Civ.P. 10(c).  Thus, the Court is not "required to accept as

7   true allegations that contradict exhibits attached to the Complaint or matters properly subject to

8   judicial notice." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

9   Specifically, "[w]hen a claim rests on a written contract and that contract is incorporated in

10  and attached to the complaint, the court is not required to 'accept as true conclusory allegations in

11  the complaint which are contradicted by the clear import of the contract itself.'" *di Grazia v.*

12  *Sazerac Co., Inc.*, No. C 08-01562 JW, 2008 WL 11388684, at *2 (N.D. Cal. Dec. 16, 2008).

13  **III.    ARGUMENT**

14  Poynt's Complaint raises four causes of action: (1) breach of contract for an alleged

15  violation of the NDA, (2) breach of contract related to the Agreement, (3) federal trade secret

16  misappropriation under the Defend Trade Secrets Act (DTSA), and (4) state trade secret

17  misappropriation under the California Uniform Trade Secrets ACT (CUTSA).  Poynt's Complaint

18  fails to state a claim as to each claim as discussed below.

19  **A.    The Claim for Breach of the Non-Disclosure Agreement Should Be Dismissed**

20  Plaintiff's count for breach of the NDA should be dismissed because the Complaint fails to

21  allege facts showing that Innowi was a party to the NDA or had any obligations under the NDA.

22  The elements of a breach of contract claim under California law[1] are: "(1) the existence of the

23  contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)

24  the resulting damages to the plaintiff." *Sourceprose Corp. v. RPX Corp.*, No. 16-CV-04089-LB,

25  2017 WL 1806496, at *6 (N.D. Cal. May 5, 2017).  Here, the Complaint fails to allege facts

26  sufficient to show the existence of a contract between Poynt and Innowi.

27  ---
[1] Paragraph 8 of the NDA, attached to the Complaint as Exhibit A, states that "This Agreement
will be construed, interpreted, and applied in accordance with the internal laws of the State of
28  California (excluding its body of law controlling conflicts of law)."

ACTIVE/97375498.2                                   2
MOTION TO DISMISS                                                            CASE NO. 5:18-CV-05814

The facts alleged in the Complaint, coupled with a review of the NDA itself, shows: (1) Innowi did not sign the NDA, (2) the NDA is non-assignable, and (3) the Complaint fails to allege facts sufficient to find that Innowi and Whizz are alter-egos.  Based on these facts, the Court should dismiss this count because there was no valid NDA between Poynt and Innowi.

1. <u>Complaint Does Not Allege Innowi Was A Party To The NDA</u>

The Complaint does not allege that Innowi signed the NDA.  Instead, the Complaint alleges that a non-party to this suit, Whizz, signed the NDA.  For example, paragraph 13 of the Complaint states that "[t]o protect Poynt's confidential information, *Poynt and Whizz* executed a Mutual Non-Disclosure Agreement ("NDA"), a copy of which is attached as Exhibit A."  Complaint ¶ 13 (emphasis added); *see also id.* at ¶ 40 ("In March 2014, *Poynt and Whizz* executed a Mutual Non-Disclosure Agreement") (emphasis added).  Poynt does not allege that Innowi was involved in this agreement and the agreement itself states that "[t]his Mutual Non-Disclosure Agreement [is] between Poynt Co. [and] Whizz Systems, Inc."  Complaint, Ex. A at 1.  The signature page of the NDA is also signed only by Whizz.  *Id.* at 3.

2. <u>Complaint Fails To Allege Sufficient Facts To Support Finding That Innowi Is Alter-Ego of Whizz</u>

To cure the obvious flaw in Poynt's claim, the Complaint alleges that "Innowi is an alter-ego to Whizz under the NDA, is not entitled to separate legal status under the NDA and is obligated by the provision of the NDA."  Complaint ¶ 45.  This pleading is insufficient and does not cure the fundamental defect of the Complaint.

Poynt's allegations of alter-ego liability are insufficient.  California recognizes alter-ego relationships, permitting a corporation's liabilities to be imposed on an individual or entity, only when two conditions are satisfied: (1) "there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased," and (2) "an adherence to the fiction of the separate existence of the corporation would...sanction a fraud or promote injustice."  *Wood v. Elling Corp.*, 20 Cal. 3d 353, 365 n.9 (1977).  "Conclusory allegations of 'alter ego' status are insufficient to state a claim.  Rather, a plaintiff must allege

1  specifically *both* of the elements of alter ego liability, *as well as facts supporting each.*" *Neilson*

2  *v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003) (emphasis added).

3        Here, the Complaint fails to allege both of the elements of alter ego liability or facts

4  supporting either element.  Indeed, the only fact the Complaint contains is that Innowi was

5  "affiliated with Whizz" and sometimes used Whizz branding or emails.  Complaint ¶ 45.  The

6  Complaint does not plead that "there is such a unity of interest and ownership that the

7  individuality, or separateness, of the said person and corporation has ceased" or that "an adherence

8  to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote

9  injustice" and thus fails to state sufficient facts to support a claim for breach of the NDA under an

10  alter-ego theory.  Indeed, Poynt offers no facts in its Complaint to support such a far-fetched

11  theory.

12        3.     <u>NDA Is Non-Assignable</u>

13        The Complaint next presents yet another alternative ground for alleging that Innowi was

14  subject to the NDA, arguing that "the evidence is likely to show after a reasonable opportunity for

15  further investigation or discovery, Whizz expressly or impliedly assigned its rights and obligations

16  under the NDA to Innowi and Innowi assumed all rights and obligations under the NDA from

17  Whizz."  Complaint ¶ 46. This allegation is insufficient and is contradicted by the express

18  language of the NDA.

19        Courts may take judicial notice of the NDA and need not accept any allegations from the

20  Complaint as true if they are contradicted by the NDA.  *See Daniels-Hall*, 629 F.3d at 998.  The

21  NDA explicitly states that "[t]his Agreement is the complete and exclusive statement regarding the

22  subject matter of this Agreement and supersedes all prior agreements, understandings and

23  communications, oral or written, between the parties regarding the subject matter of this

24  Agreement.  **Neither party may assign this Agreement, in whole or in part, without the other**

25  **party's prior written consent, and any attempted assignment without such consent will be**

26  **void.**"  Complaint, Ex. A at 2 (emphasis added).  The Complaint does not plead that any such

27  written consent exists and thus even if Whizz attempted to assign the NDA to Innowi, it would be

28  an invalid assignment and Innowi still would have no obligations under the NDA.  This claim

should therefore be dismissed because Innowi was not a party to the NDA and no contract existed between Innowi and Poynt.

### B. The Claim for Breach of the Agreement Should Be Dismissed

Poynt accuses Innowi of breaching the Agreement because Innowi did not assign intellectual property Innowi created after the Agreement terminated.  Poynt alleges that the Agreement "provided that Poynt would own *any and all* intellectual property associated with or otherwise derived as a result of the project," Complaint ¶ 14, and that the patent applications that Innowi filed in 2015 and 2017 were "derived from Innowi's work on Poynt's Development Project and reflects inventions conceived by Poynt's own employees rather than by Innowi's employees."  Complaint ¶¶ 28-29.

Poynt's claim for breach of the Agreement should be dismissed for three reasons.  First, Poynt has not plausibly alleged that Innowi breached the Agreement by failing to assign its patent applications to Poynt because Poynt has not plead any factual allegations to support its theory that the patent applications filed years after the Development Project ("Project") were "derived from Innowi's work on Poynt's Development Project."  Second, the Agreement is not enforceable because it imposed no obligations on Innowi and it gave Poynt the unilateral right to arbitrarily terminate the contract.  Third,  Innowi did not breach the Agreement when it filed patent applications in 2015 and 2017 because it had no obligation to transfer intellectual property to Poynt that had not accrued by the time that Poynt terminated the Agreement.

#### 1. No Plausible Allegations That Innowi Patents Were Derived From Work Performed Under The Agreement

First, the Court should dismiss this count because Poynt has not plead sufficient facts to support a theory that the Innowi patent applications that were developed and filed in 2015 and 2017 "were derived from Innowi's work on Poynt's Development Project" in 2014.  *See* Complaint ¶¶ 28-29.  Without sufficient factual allegations, it is not plausible to argue that patent applications filed three years after the Project were "derived" from the Project.

While Poynt alleges that the Agreement "provided that Poynt would own *any and all* intellectual property associated with or otherwise derived as a result of the project," Complaint ¶

14, it has not provided any factual allegations that *any* intellectual property was derived as a result of the Project, let alone that Innowi's patent applications that were filed years later somehow arose out of the brief Project. The Court should reject Poynt's deficient pleadings on this issue and ignore Poynt's conclusory statements. *See, e.g., Western Mining*, 643 F.2d at 624.

At most, the Complaint includes the conclusory allegation that the 2015 "patent application is derived from Innowi's work on the Project and reflects inventions conceived by Poynt's own employees rather than by Innowi's employees" because it claims two of the same components (secure processor to process payment data and processor to run applications) found in Poynt's device. *Id.* ¶ 28. Poynt does not explain how either of these components were "derived" from Innowi's work on theProject or how those components, devoid of the rest of the patent's claimed elements, are protectable intellectual property that should have been assigned to Poynt.

Similarly, for the 2017 applications, Poynt merely alleges that "the allowed claims of the application recite material derived from Innowi's work on the Project" without explaining what the "material" is and how it was " derived" from the Project. *Id.* ¶ 29 (also alleging that "the evidence is likely to show after a reasonable opportunity for further investigation or discovery" that the second 2017 application "also covers material derived from Innowi's work on Poynt's Development Project."). The Court should therefore dismiss the breach of Agreement count because Poynt has not alleged sufficient facts showing that *any* IP was "derived" from the Project, let alone that the patents that Innowi filed years later were "derived" from the Project.

2.   The Agreement Is Unenforceable

The Court also should dismiss this claim because the so-called Agreement (titled "Business Terms Sheet") is unenforceable for two reasons: (1) Innowi had no obligations under the Agreement; and (2) the Agreement is an illusory contract.

First, the contract is unenforceable because, by its very terms, it imposed no obligations on Innowi. A contract is unenforceable for lack of consideration when it imposes no obligations on a party. *See, e.g., U.P.S., Inc. v. Benz*, No. C95 1900 VRW, 1996 WL 931997, at *6 (N.D. Cal. Mar. 1, 1996). Here, the Agreement neither imposes any obligations on Innowi nor does it provide for any benefit to Innowi.

[lines 1-3 redacted]

Indeed, the rest of the Agreement neither mentions Innowi a single time (aside from being present in the signature block) nor mentions any responsibilities owed by Innowi. Because Innowi did not have any responsibilities under the Agreement, it cannot have breached the Agreement and the Agreement cannot be an enforceable contract against Innowi. See *U.P.S.*, 1996 WL 931997, at *6.

Second, the Agreement is unenforceable because it was an illusory contract where Poynt had the arbitrary right to terminate the Agreement at any point and absolve itself of any obligations. "A contract is unenforceable as illusory when one of the parties has the unfettered or arbitrary right to modify or terminate the agreement." *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 385 (2016).

It is a tenet of contract law that "promissory words are illusory if they are conditional on some fact or event that is wholly under the promisor's control and bringing it about is left wholly to the promisor's own will and discretion. [On the other hand,] the fact that one party reserves the implied power to terminate or modify a unilateral contract is not fatal to its enforcement, if the exercise of the power is subject to limitations, such as fairness and reasonable notice." *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 16, 999 P.2d 71, 79 (2000). "When a condition precedent to a promisor's performance calls for satisfaction as to commercial value, the contract is not illusory because the promisor's ability to claim dissatisfaction is limited by the standard of reasonableness. *On the other hand, when the promisor's satisfaction deals with matters of fancy, taste, or judgment, the promisor's judgment is purely subjective.*" *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 61, 122 Cal. Rptr. 2d 267, 281 (2002) (emphasis added) (holding there must be an implied covenant of food faith to support consideration if promisor's satisfaction is purely subjective).

Poynt's second claim is based upon a document named "Business Terms Sheet," which Poynt now reframes in its pleading as a Development Agreement ("Agreement," *see supra*). Complaint, Ex. B. [redacted]

1
2
3           *Id.* As noted above, the Agreement does not impose any obligations or benefits
4  on Innowi and is opaque with respect to the obligations owed by Whizz and Poynt to one another.
5
6
7                                                                                 *Id.* at 2.
8
9
10
11                              *Id.* at 2.
12
13                                                                                 *Id.* This
14 creates an illusory contract because it is "left wholly to the promisor's own will and discretion"
15 whether or not it meet its obligations and is not subject to meaningful limitations, "such as fairness
16 and reasonable notice" or an objective standard of reasonableness. *See Asmus*, 23 Cal. 4th at 16.
17 This count should therefore be dismissed because the Agreement is unenforceable as an illusory
18 contract.

       3.    <u>No Obligations To Transfer IP Accrued After Poynt Alleges They Terminated The Agreement</u>

21        The breach of the Agreement claim should also be dismissed because the facts alleged do
22 not demonstrate that Innowi breached the Agreement.  The Complaint alleges that Poynt
23 terminated the Agreement *prior* to Innowi developing the intellectual property at issue (the "IP")
24 and thus Innowi, even if it had obligations under the contract, was not obligated to assign the IP to
25 Poynt.
26        It is a basic principle of contract law that "'[t]ermination' occurs when either party
27 pursuant to a power created by agreement or law puts an end to the contract otherwise than for its
28 breach.  On 'termination,' all obligations which are still executory on both sides are discharged but

any right based on prior breach or performance survives." *Petrus v. New York Life Ins. Co.*, No. 14-CV-2268 BAS JMA, 2015 WL 3796221, at *3 (S.D. Cal. June 18, 2015).  In other words, a party "is not liable after termination for further transactions thereunder [the terminated contract], but obligations which have already accrued are not affected." *Merrill v. Cont'l Assur. Co.*, 200 Cal. App. 2d 663, 670, 19 Cal. Rptr. 432, 437 (Ct. App. 1962); *see also McCarther v. Pac. Telesis Grp.*, 48 Cal. 4th 104, 114, 225 P.3d 538, 544 (2010) ("the term 'accrued' means to 'come into existence as an enforceable claim or right; to arise.'").

Here, Poynt alleges that it terminated the Agreement and thus extinguished both parties from accruing new obligations based on the Agreement.  At best, Poynt only had the ownership related IP that was developed under the agreement during the lifetime of the agreement.  Conversely, Innowi was not obligated to assign any IP to Poynt that was developed *after* Poynt terminated of the Agreement.  The Complaint makes three key factual allegations fatal to its claim: (1) the Agreement required Innowi to assign all intellectual property associated with and derived as a result of the Agreement project (Complaint ¶ 54); (2) Poynt terminated the Agreement in December 2014 (Complaint ¶ 24); and (3) Innowi filed patent applications on similar technologies (i.e., the IP) in September 2015 and 2017 (Complaint ¶¶ 28-29).  These facts do not support a claim for breach of the Agreement because Innowi's obligations under the agreement ended once Poynt terminated the contract.  The intellectual property at issue here, three patent applications, did not "come into existence" until 2015 and 2017 and cannot be subject to the Agreement that was terminated in December 2014.  Because the allegations of misappropriating the intellectual property form the exclusive basis for the alleged breach, the Court should dismiss this count.

**C.    Count for Misappropriation of Trade Secrets Should Be Dismissed**

The two counts for trade secret misappropriation should be dismissed because Poynt has not alleged facts sufficient to find that Innowi had a duty to maintain the secrecy of Poynt's information.  Additionally, Poynt has not sufficiently defined its trade secrets with enough "sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244,

1  253, 67 Cal. Rptr. 19, 24 (Ct. App. 1968); *see also Albin v. Trustmark Ins. Co.*, No. CV 13-5788
2  PSG (AGR), 2013 WL 12191722, at *9 (C.D. Cal. Nov. 25, 2013) (dismissing claim for trade
3  secret misappropriation due to lack of specificity in complaint).  Thus the Court should dismiss the
4  two trade secret misappropriation counts for failure to state a claim.

5      1. <u>Innowi Had No Duty To Maintain Secrecy of Poynt Information</u>

6    Innowi cannot be found to have misappropriated trade secrets, under state or federal law,
7  because the Innowi had no duty to maintain the secrecy of Poynt's information.  The Complaint
8  alleges six alternative grounds for finding that Innowi had a duty to maintain the secrecy of
9  Poynt's information: (1) the existence of the NDA; (2) the fact the Agreement is labeled as
10 confidential; (3) the fact the Agreement says Poynt will own all IP associated with the project; (4)
11 "it is understood in the contract development business"; (5) both sides acted in conformity with
12 their agreement; and (6) following the termination of the agreement, Innowi recognized its
13 obligation not to disclose Poynt's information.  Each of these allegations, however, does not
14 support the contention that Innowi had a duty to protect Poynt's confidential information as trade
15 secrets.
16   First, as explained above, Poynt has not sufficiently alleged that Innowi was a party to the
17 NDA.  *See* Section III.A, *supra.*  Thus the NDA could not be the basis of any confidentiality
18 duties.  Next, the fact that the Agreement between the parties was a confidential agreement,
19 outlining payments and various obligations, does not transform any information shared under that
20 agreement into trade secrets.  Indeed, the Agreement *is completely silent* with respect to
21 maintaining confidentiality of  Poynt's information.  It would be expected that the Agreement
22 would outline the various confidentiality obligations of the parties, if the parties intended there to
23 be such provisions, alongside the other obligations explicitly listed.
24   Further, that the Agreement states that Poynt will own IP *associated with or derived as a*
25 *result of the project* does not evidence that Poynt had pre-existing trade secrets or that Innowi was
26 obligated to maintain confidentiality of all Poynt information transmitted as part of the project.
27 Indeed, any alleged "trade secrets" that were given from Poynt to Innowi would pre-date any IP
28 *derived as a result of the project*.  And Poynt's vague allegations that "it is understood in the

1  contract development business .. . that a client's information must be protected" (Complaint ¶ 65)
2  does not support the allegations that Poynt owned any trade secrets or that Innowi was aware that
3  certain Poynt information constituted trade secrets.  Similarly, the fact that Innowi "acted in
4  conformity with [the] Agreement" evidences, at most, that Innowi did not breach the Agreement.
5  But as the Agreement was silent as to any confidentiality obligations or trade secrets, as explained
6  above, Innowi's conformance to the Agreement has no bearing on whether Poynt has valid trade
7  secrets or whether Innowi had obligations to keep any Poynt information confidential.
8       Finally, Poynt's allegation that "Innowi recognized its obligation not to use or disclose
9  Poynt's information in its response to Poynt's demand letter and in its draft termination
10 agreement," *id.*, is contradicted by the factual allegations of the Complaint.  The Complaint
11 evidences that Innowi merely confirmed that it was not using or disclosing any of Poynt's
12 confidential information or trade secrets – *not* that it had any obligation or that trade secrets
13 necessarily existed.  Complaint ¶ 33.  And previous communications between the parties, as
14 outlined in the Complaint, actually evidence that Innowi *did not* admit or recognize that it had
15 obligations to protect any Poynt information as confidential.  For example, the Complaint alleges
16 that in response to Poynt's proposed termination agreement, "Innowi sent Poynt a new proposal
17 that included a provision stating, in contradiction to the Development Agreement, that Innowi
18 would own 'any know-how' relating to the Development Project." *Id.* at ¶ 25.  At the most,
19 Innowi's proposal acknowledged that Innowi would ensure that Whizz complied with Whizz's
20 confidentiality obligations to Poynt.  *Id.*  The Complaint does not allege that Innowi
21 acknowledged its own obligations and thus fails to state facts supporting Poynt's conclusion that
22 "Innowi recognized its obligation not to use or disclose Poynt's information." *Id.* at ¶¶ 65, 76.
23       Because Innowi did not have any obligation to maintain the secrecy of Poynt's
24 information, that information was not a trade secret, and this count must be dismissed for failing to
25 state a claim.
26
27
28

### 2. Complaint Does Not Sufficiently Allege What Trade Secrets Were Misappropriated

The Court should also dismiss the trade secret claims because plaintiff has not "allege[d] the trade secret with some particularity in order to give Defendant 'reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery.'" *Albin*, 2013 WL 12191722, at *9; *see also Diodes*, 260 Cal. App. 2d at 253.  While a plaintiff is not "required to disclose his trade secret in a public filing," it must "describe the subject matter of the trade secret with sufficient particularity [in the complaint] to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." *Albin*, 2013 WL 12191722, at *8-*9.  For example, Courts have dismissed claims of trade secret misappropriation where the complaint "merely alleges that 'at all times relevant the confidential information constituted [Plaintiff's] trade secrets' and that Defendant 'obtain[ed] and misappropriate[d] the confidential information.'" *Id.* (quotation omitted).

Here, the Complaint merely lists a number of general documents that Poynt considers to be trade secrets (e.g., schematics, source code, lists of suppliers and vendors, etc.). *See* Complaint ¶¶ 60, 71.  It then makes general allegations that "Innowi misappropriated Poynt's trade secrets by improperly using Poynt's trade secrets to develop and market a competing product and by disclosing Poynt's trade secrets to other without authorization." *Id.* at ¶¶ 66, 77.  However, the Complaint fails to state which, if any, trade secrets Innowi even had access to, let alone which trade secrets it has allegedly misappropriated. *Id.*; *see also id.* at ¶¶ 64, 75 ("As a design manufacturing contractor involved in the development of hardware for the Poynt Smart Terminal device, Innowi acquired knowledge and custody *of several of Poynt's trade secrets*.") (emphasis added).  The use of "such a broad-sweeping, nebulous definition [of what was allegedly misappropriated] not only fails to shed any light on the general nature of these trade secrets, but it is tautological as well." *Albin*, 2013 WL 12191722, at *9.  Because Innowi cannot tell from the Complaint what it has been accused of misappropriating (and whether it even had access to such information), Innowi does not have 'reasonable notice of the issues which must be met at the time

of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery.'"
*Albin*, 2013 WL 12191722, at *9 (holding that "[b]ecause Plaintiff fails to provide Defendant with 'reasonable notice' of his trade secret claim, the Court GRANTS Defendant's Motion [to dismiss] as to this claim."). This count, therefore, should be dismissed for failure to state a claim.

## IV.   CONCLUSION

For the above stated reasons, the Court should dismiss the Complaint for failure to state a claim.

Dated: November 15, 2018

Respectfully submitted,

By: */s/ Neel Chatterjee*
Neel Chatterjee (SBN 173985)
*nchatterjee@goodwinlaw.com*
Luc Dahlin (SBN 305732)
*ldahlin@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel.: +1 650 752 3100
Fax.: +1 650 853 1038

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on November 15, 2018.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.  Executed this 15th day of November 2018.

*/s/ Neel Chatterjee*
NEEL CHATTERJEE