CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
JACOB M. HEATH (SBN 238959)
jheath@orrick.com
WILL MELEHANI (SBN 285916)
wmelehani@orrick.com
JOHANNA L. JACOB (SBN 286796)
jjacob@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone: +1-415-773-5700
Facsimile: +1-415-773-5759

Attorneys for Plaintiff
POYNT CORPORATION

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

POYNT CORPORATION,

Plaintiff,

v.

INNOWI, INC.,

Defendant.

Case No. 5:18-cv-05814 BLF

**PLAINTIFF POYNT CORPORATION'S OPPOSITION TO DEFENDANT INNOWI, INC.'S MOTION TO DISMISS**

Date: February 14, 2019
Time: 9:00 a.m.
Courtroom 3, 5th Floor
Judge: Hon. Beth L. Freeman

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

A. Poynt Properly Pled That Innowi Is Bound by the NDA. ........ 1

1. Poynt Has Adequately Pled That Whizz Signed the NDA as Innowi's Alter Ego. ........ 1

2. The NDA's Written Consent Requirement Does Not Undo Innowi's Assumption of Obligations Under the NDA. ........ 3

B. Poynt Properly Claims That Innowi Breached the Development Agreement ........ 4

1. The Development Agreement Is Supported by Mutual Consideration. ........ 4

2. Poynt Has Correctly Pled That Innowi's Attempts to Patent Poynt's Technology Are a Breach of the Development Agreement. ........ 7

C. Poynt's Allegations That Innowi Was Under a Duty to Maintain the Secrecy of Poynt's Trade Secrets Are Sufficient. ........ 10

D. Poynt Has Identified Its Trade Secrets With the Requisite Particularity. ........ 13

III. CONCLUSION ........ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Activity Corp. v. Intercede Grp. PLC*,
No. C 08-4577 VRW, 2009 U.S. Dist. LEXIS 132206 (N.D. Cal. Sept. 11, 2009)....9, 10

*Albin v. Trustmark Ins. Co.*,
No. CV 13-5788 PSG (AGR), 2013 WL 12191722 (C.D. Cal. Nov. 25, 2013)....14

*Asmus v. Pac. Bell*,
23 Cal. 4th 1 (2000)....6

*Autodesk, Inc. v. Zwcad Software Co.*,
No. 5:14-cv-01409-EJD, 2015 U.S. Dist. LEXIS 63610 (N.D. Cal. May 13, 2015)....13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....10

*Bioscience v. Sabyent, Inc.*,
No. CV 10-2255-GW(SHx), 2010 U.S. Dist. LEXIS 151013 (C.D. Cal. Sept. 16, 2010)....13

*Brocade Commc'ns. Sys. v. A10 Networks, Inc.*,
No. 10-CV-03428-LHK, 2011 U.S. Dist. LEXIS 30227 (N.D. Cal. Mar. 23, 2011)....13

*Daugherty Co. v. Kimberly-Clark Corp.*,
14 Cal. App. 3d 151 (1971)....4

*DocMagic, Inc. v. Ellie Mae, Inc.*,
745 F. Supp. 2d 1119 (N.D. Cal. 2010)....13

*Domino v. Mobley*,
144 Cal. App. 2d 24 (1956)....5

*GSI Tech., Inc. v. United Memories, Inc.*,
No. 5:13-cv-01081-PSG, 2016 U.S. Dist. LEXIS 69975 (N.D. Cal. May 26, 2016)....8

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)....2

*Ousley v. Fid. Nat'l Fin.*,
No. A120692, 2009 Cal. App. Unpub. LEXIS 7878 (Sept. 30, 2009)....3

*Pachmayr Gun Works, Inc. v. Olin Mathieson Chem. Corp.*,
502 F.2d 802 (9th Cir. 1974).....10

*Perdue v. Crocker Nat'l Bank*,
38 Cal. 3d 913 (1985) .....7

*Sabo v. Fasano*,
154 Cal. App. 3d 502 (1984).....3

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*
100 Cal. App. 4th 44, (2002).....6

*U.P.S., Inc. v. Benz*,
No. C95 1900 VRW, 1996 WL 931997
(N.D. Cal. Mar. 1, 1996) .....5, 6

*Western Mining Council v. Watt*,
643 F.2d 618 (9th Cir.1981).....9

*W.L. Gore & Assocs., Inc. v. GI Dynamics, Inc.*,
No. CV-10-8088-PHX-GMS, 2010 U.S. Dist. LEXIS 133309
(D. Ariz. Dec. 15, 2010).....13

*Zoran Corp. v. Chen*,
185 Cal. App. 4th 799 (2010).....2

**Other Authorities**

Manual of Patent Examining Procedure MPEP § 201.08 .....9

# I. INTRODUCTION

Innowi's motion to dismiss consists of a proverbial grab-bag of arguments that are contradicted both by the facts in the Complaint and by the very case law on which Innowi relies. But many of Innowi's arguments boil down to the proposition that Innowi could not have breached the Development Agreement or the Mutual Non-Disclosure Agreement ("NDA") because those documents refer to Whizz Systems, Inc. ("Whizz") and not to Innowi. There are several problems with this argument, but at the most basic level, this argument fails because the Complaint clearly alleges that: (a) Innowi and Whizz acted as one entity during the contracting phase (indeed, they even signed the Development Agreement as "Whizz Systems Inc./Innowi Inc."), (b) Innowi subsequently performed the work and got paid for it, and (c) Innowi recognized, in its proposed documents to terminate the parties relationship, that ***it*** was the responsible party. Against this background, Innowi's insistence that the contract's references to Whizz absolve it of any obligations is remarkable. The Court should reject Innowi's motion and allow this case to move forward.

# II. ARGUMENT

## A. Poynt Properly Pled That Innowi Is Bound by the NDA.

Poynt has sufficiently pled two alternative theories as to why Innowi is bound by the NDA: (1) Whizz acted as Innowi's alter ego in signing the NDA, and (2) Innowi assumed Whizz's obligations under the NDA. Innowi argues that Poynt's claim for breach should be dismissed because the Complaint supposedly fails to allege sufficient facts for either of these alternative grounds. Both arguments are incorrect.

### 1. Poynt Has Adequately Pled That Whizz Signed the NDA as Innowi's Alter Ego.

Innowi argues that Whizz was not Innowi's alter ego with regard to the NDA. Mot. at 3-4. But Whizz and Innowi were acting essentially as one company at the time the NDA was executed and literally ***signed*** the subsequent Development Agreement as Whizz/Innowi. Complaint, Ex. B at 2. It is hard to imagine what other facts would be needed to support the allegation that the companies were operating as one entity when, as here, they ***purported to sign***

***the key document as one entity.***[1]

Moreover, Poynt's Complaint includes numerous allegations showing that Whizz was Innowi's alter ego with regard to the NDA. To determine if there is "unity of interest" between two entities, courts examine "all the circumstances," including factors such as "the use of the same office or business location," "the disregard of legal formalities and the failure to maintain arm's length relationships among related entities" and "the use of the corporate entity to procure labor, services or merchandise for another person or entity." *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811-12 (2010). Poynt's allegations show that Whizz and Innowi merged their activities in these precise ways. Poynt alleges that it negotiated with Whizz to retain the services of Innowi, indicating that Whizz was holding itself out as having authority to bind Innowi. Complaint ¶ 11. Poynt also alleges that both Whizz and the founders of Innowi made representations that the team working on Poynt's development project was affiliated with both companies. *Id.* ¶ 45. During the project, the Innowi team corresponded with Poynt using Whizz email addresses. *Id.* And, when the Development Agreement was signed by Zia Hasnain, Innowi's CEO, he indicated that he was signing on behalf of Whizz/Innowi—even though the terms of the agreement refer only to "Whizz." *Id.* ¶ 15. Innowi also submitted its work product to Poynt using Whizz's document labels and letterhead. *Id.* ¶ 45.

Moreover, the NDA and Development Agreement both were drafted to refer to Whizz even though the parties' clear intent (as evidenced by their conduct) was to have the Innowi team work on the project. Complaint, Exs. A & B. Poynt's Complaint explains that the actual performance of the Development Agreement to which the NDA pertained was carried out by

[1] The Court can also take judicial notice of the fact that Whizz and Innowi shared the same business address. *See* Declaration of Will Melehani in Support of Plaintiff Poynt Corporation's Opposition to Defendant Innowi Inc.'s Motion to Dismiss ("Melehani Decl.") Ex. 1; Ex. 2 at 1 (showing both Whizz and Innowi located at 3240 Scott Blvd., Santa Clara, CA). Munawar Karimjee and Muhammad Ifran, both officers at Whizz, were directors at Innowi. *Id.* Ex. 1, Ex. 2 at 1-2; *see also* Complaint, Ex. A at 3 (signed by Muhahamad Ifran as Whizz's "President"). And Whizz held out Innowi as being part of Whizz's team. *See* Melehani Decl. Ex. 3 at 1 ("**Part of my team** consists of a group we funded last year, Innowi, co-located in our building) (emphasis added). *See also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (explaining that, in deciding a motion to dismiss, a court may take judicial notice of facts that are "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

Innowi, even though it was nominally signed by Whizz. *Id.* ¶¶ 16-20. And after Poynt removed Innowi from the project, Innowi recognized that it rightfully owed confidentiality obligations to Poynt. *See* Complaint, Ex. D at 1 (explaining that [redacted] ). Over a year later, Innowi continued to acknowledge its obligation not to use Poynt's confidential information. *See* Complaint, Ex. F. These facts are more than sufficient to show that Innowi and Whizz had the unity of interest necessary to support an allegation that Whizz was acting as Innowi's alter ego in signing the NDA.

For these same reasons, Poynt's allegations demonstrate that failing to treat Whizz as Innowi's alter ego would lead to an inequitable result. Indeed, that is exactly what Innowi is trying to do here – to use Whizz's and Innowi's own sloppiness in corporate form as a shield to disclaim all liability after they signed a contract, performed work and got paid for that work. The Court should therefore find that the facts alleged in the Complaint are sufficient to support Poynt's claim that Whizz signed the NDA as Innowi's alter ego.[2]

### 2. <u>The NDA's Written Consent Requirement Does Not Undo Innowi's Assumption of Obligations Under the NDA.</u>

Innowi disputes Poynt's theory (plead in the alternative) that Innowi assumed Whizz's obligations under the NDA. Mot. at 4-5. In particular Innowi argues that it has no obligations under the NDA because any attempted assignment from Whizz to Innowi would be invalid due to a provision in the NDA forbidding either party from assigning the agreement without the other party's written consent. Mot. at 4.

The requirement that Whizz obtain Poynt's written consent before any assignment was indisputably for Poynt's benefit, and Poynt waived it through its conduct over the course of the development project. *See Sabo v. Fasano*, 154 Cal. App. 3d 502, 505 (1984) (explaining that a party may waive conditions placed in a contract for its own benefit); *Ousley v. Fid. Nat'l Fin.*,

---

[2] To the extent Innowi is arguing that Poynt's allegations are deficient because Poynt did not separately recite the two legal elements of the "alter ego" framework, Poynt can readily do so by amendment if necessary.

No. A120692, 2009 Cal. App. Unpub. LEXIS 7878, at *15 (Sept. 30, 2009) ("An implied waiver of a right is based on conduct so inconsistent with an intent to enforce the right that the court infers intentional relinquishment of the right.").

The Complaint pleads all of the facts necessary to support the assignment theory. In particular, it explains how, after the NDA was signed, Innowi went on to contract with Poynt concerning the business opportunity discussed in the NDA, signed the Development Agreement as Whizz/Innowi and proceeded to work on Poynt's project under the Development Agreement, which is itself marked confidential. Complaint ¶¶ 14, 18, 19. Because the NDA is silent on the issue of waiver, Poynt was free to allow Innowi to assume Whizz's obligations under the NDA without requiring a formal writing—and given the fact that Innowi purported to sign the Development Agreement as Whizz/Innowi, Poynt had every reason to believe that no such writing was needed.[3] The Court should therefore reject Innowi's attempt to attack the assignment theory.

**B. Poynt Properly Claims That Innowi Breached the Development Agreement**

Innowi advances several arguments in support of its assertion that the Development Agreement is unenforceable and that Poynt has failed to properly plead its claim. All of those arguments are wrong.

**1. The Development Agreement Is Supported by Mutual Consideration.**

Innowi attacks the enforceability of the Development Agreement by claiming it provides no consideration to Innowi. In particular, Innowi argues that the Development Agreement recites obligations and benefits between Whizz and Poynt but imposes no obligations on and provides no benefits to Innowi. Mot. at 6-7. This is incorrect. As discussed at length above, at the time the Development Agreement was executed, Innowi and Whizz intermingled their activities and

[3] Alternatively, the same result could be reached through finding an implied modification of the NDA, which, like a waiver, can be used to reconcile the parties' clear intentions as expressed through their conduct with a potentially inconsistent written term. *See Daugherty Co. v. Kimberly-Clark Corp.*, 14 Cal. App. 3d 151, 158 (1971) ("An agreement to modify a written contract will be implied if the conduct of the parties is inconsistent with the written contract so as to warrant the conclusion that the parties intended to modify it."). The NDA is also silent on the issue of modification and thus presents no contractual barrier.

Innowi used Whizz's name freely. *See* Section II.A.1, above. The agreement was signed by Innowi's Zia Hasnain on behalf of Whizz/Innowi. Complaint, Ex. B at 2. The parties didn't care whether the terms of the contract referred to Whizz or Innowi because the parties didn't think it mattered.

The course of conduct shows that both parties understood at the time that Innowi would be performing the tasks outlined in the Development Agreement, which is why ***Innowi*** (not Whizz) performed the work under the Development Agreement (Complaint ¶¶ 16-20), and why Poynt paid ***Innowi*** (not Whizz) for that work. *Id.* ¶ 23. Given the conduct of the parties, Innowi cannot now credibly pretend that it had no obligations under the Development Agreement.

Innowi's denial of any obligations under the development agreement is also contradicted by its own subsequent draft agreement. After Poynt terminated Innowi's engagement on the project, Innowi provided a draft termination agreement that attempted to clean up some of the prior messiness between Whizz and Innowi by claiming that the Development Agreement's use of "Whizz" rather than "Innowi" was a mistake:



Complaint, Ex. D at 1 (emphasis added). Even adopting Innowi's own version of the facts,[4] Innowi would still have been obligated under the Development Agreement to perform the tasks that were "inadvertently" attributed to Whizz. *See Domino v. Mobley*, 144 Cal. App. 2d 24, 29 (1956) (explaining that a typographical error in a contract can be resolved through the use of extrinsic evidence).

Innowi's reliance on *U.P.S., Inc. v. Benz*, which involved a real lack of consideration, is misplaced. No. C95 1900 VRW, 1996 WL 931997, at *6 (N.D. Cal. Mar. 1, 1996). That case

[4] The true story is that the interchanged names were the result of Innowi and Whizz operating as one entity rather than due to a mere typographical error. If this had been a mistake, it would have been easy for Innowi to simply correct the names before signing rather than accepting Whizz's presence in the agreement by signing on behalf of Whizz/Innowi.

involved a contract that lacked consideration because it involved a promise from a shipping company that obligated it to do nothing "aside from those that it was already bound to provide by law." *Id*. The case is plainly inapplicable here as the Development Agreement obligates both Poynt and Innowi to tender performance that neither party was previously obligated to perform. Both Poynt and Innowi received benefits and assumed obligations under the Development Agreement. There is no lack of consideration here. The Development Agreement is not illusory.

Innowi also argues that the Development Agreement is illusory because it gave Poynt the right to terminate the project. Mot. at 7-8. This argument is also wrong.

First, the Development Agreement cannot be illusory because Innowi received payment under the agreement while the project was under way. Innowi's own authority confirms that a contract is not illusory where the party "obtained the benefits of the [contract] while it was operable." *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 16 (2000). In *Asmus*, the court explained that a contract is not illusory where the party "obtained the benefits of the [contract] while it was operable." *Id*. For that reason, the court held that an employment contract allowing for at-will termination was not illusory because the agreement provided benefits during the term of employment prior to termination. *Id*. The same reasoning applies here. Innowi obtained the benefit of the Development Agreement while it was operable because Poynt paid Innowi for its services. *See* Complaint ¶ 23. Innowi received the engagement fee and payment for at least the first two milestones. Complaint, Ex. D at 1 ("[redacted] [redacted]"). Because Poynt was "obligated to follow it as long as the [Development Agreement] remained in effect," the agreement was not illusory. *Asmus*, 23 Cal. 4th at 16.

Second, Innowi is wrong when it argues that the Development Agreement is illusory because it permits Poynt to condition payment for the development milestones on Poynt's acceptance of Innowi's results. Innowi cites no authority holding that a contract is illusory or unenforceable because it permits one party to condition its performance on its satisfaction with the other party's performance. In fact, Innowi's authority shows that the opposite is true. In the *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.* decision cited by Innowi, the court discusses at

length how such promises *are* enforceable. 100 Cal. App. 4th 44, 58-60 (2002) (explaining how discretionary promises are evaluated under objective reasonableness and good faith standards).

Indeed, as the California Supreme Court explained, in contracts with discretionary terms, "a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." *Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 923 (1985) (citations omitted). Further, "a contracting party's discretionary power to vary the price or other performance does not render the agreement illusory if the party's *actual* exercise of that power is reasonable." *Id*. (italics in original and citations omitted). Put differently, because Poynt was obligated to exercise its discretion to accept or reject Innowi's work product in good faith, it had real (and not illusory) obligations to Innowi.

Notably, Innowi does not argue that Poynt's ultimate decision to halt the project was objectively unreasonable or in bad faith. Nor can it. Poynt alleges that it terminated the project after Innowi failed to meet deadlines and achieve the promised manufacturing cost for Poynt's product. Complaint ¶¶ 23-24. Innowi recognized that " [REDACTED] " because of these difficulties. Complaint, Ex. D at 1. Because Poynt's option to end the project was limited by an implied duty of good faith, because Poynt exercised that right in good faith, and because Poynt was obligated to (and did) pay Innowi for the milestones achieved during the project, the Development Agreement is not illusory.[5]

**2. <u>Poynt Has Correctly Pled That Innowi's Attempts to Patent Poynt's Technology Are a Breach of the Development Agreement.</u>**

Innowi also argues that it could not have breached the Development Agreement because it did not submit its patent applications based on Poynt's technology until after Poynt had halted the project. Mot. at 8-9. At the core of Innowi's argument is the assumption that Poynt's right to own all of the intellectual property associated with the development project attached only to

---

[5] Innowi's motion also criticizes the clarity of the Development Agreement, even though Innowi apparently understood its obligations when the agreement was signed and during the project. Mot. at 7-8. It is not clear from the motion if Innowi is suggesting these criticisms have any relevance to the question of whether the contract is illusory. As explained above, they do not.

patent applications filed during the term of the project.

There is no support for Innowi's narrow interpretation of the Development Agreement. To the contrary, the relevant passage makes clear the parties intended "Poynt to own all IP associated with and derived as a result of this project." Complaint, Ex. B at 2. That sweeping phrase is not limited to patent applications, much less to patent applications filed during the engagement. The Development Agreement does not purport to provide a limiting definition of "IP" and the common definition includes both trade secrets and proprietary information. *See GSI Tech., Inc. v. United Memories, Inc.*, No. 5:13-cv-01081-PSG, 2016 U.S. Dist. LEXIS 69975, at *14 (N.D. Cal. May 26, 2016) (explaining that "[t]rade secret rights are plainly intellectual property rights" while interpreting the term "intellectual property rights" in a similar contract).

Moreover, contrary to Innowi's claim, many of Poynt's trade secrets and inventions (such as the design of Poynt's printed circuit board, Poynt's selection of components, the hardware designs developed with Innowi's services, and the identity of Poynt's suppliers and consultants) did "come into existence" during the lifetime of the Development Agreement. *See* Complaint ¶ 19 (listing trade secret information accessible to Innowi during the project). The fact that Innowi delayed nine months before attempting to patent Poynt's technology is irrelevant.

To be clear, Poynt does not allege that it owns intellectual property ***independently*** developed by Innowi after Poynt halted the Development Agreement project. However, under the terms of the Development Agreement, Poynt ***does*** own any intellectual property that was "derived as a result of [the] project." Complaint, Ex. B at 2. For purposes of this motion, however, the Court need not attempt to sort out which is which, because the Complaint alleges that (a) Innowi had access to Poynt's confidential and trade-secret information ***during*** the development project, (b) Innowi filed a patent application reflecting inventions that were developed ***during*** that project, and (c) Innowi breached the Development Agreement by seeking to patent material that was ***derived*** as a result of the Development Agreement and by making use of trade secrets that belong to Poynt. Complaint ¶¶ 19, 28, 56. All of the bases are covered.

Innowi also argues that Poynt has not sufficiently pled facts showing that Innowi's patents relate to Poynt's development project. Mot. at 5-6. In particular, Innowi argues that "[w]ithout

sufficient factual allegations, it is not plausible to argue that patent applications filed three years after the Project were 'derived' from the Project." *Id*. at 5. This argument is wrong for multiple independent reasons.

First, Innowi's suggestion that the challenged patents were filed after a three-year delay is misleading. Innowi filed its first patent application on a payment terminal product in September 2015, a mere nine months after Poynt fired Innowi.[6] Complaint ¶ 28. Innowi's subsequent applications (filed in 2017) are continuations-in-part of Innowi's original application, meaning they include material disclosed in Innowi's original 2015 application.[7]

Second, Poynt has pled numerous ***facts*** showing that the material in Innowi's patent applications was derived from Poynt's development project.[8] As Poynt explains in its Complaint, the device described in Innowi's patent applications ***is*** Poynt's product.[9] *See* Complaint ¶ 28 (stating that "[t]he Innowi application discloses details about the design of Poynt's smart terminal device"). Poynt details how the patents describe the same structure and components as Poynt's device. *Id*. Poynt also explains how Innowi lacked any technical knowledge relating to payment devices before the project. *Id.* ¶ 18. Poynt alleges that Innowi gained access to all that information during its work on the project. *Id.* ¶ 19. And Poynt alleges facts suggesting that

---

[6] Around this time, Innowi was still publicly holding itself out to be a design manufacturing company. *See* Melehani Decl., Ex. 4 (showing Innowi's website as it appeared on August 1, 2015 (https://web.archive.org/web/20150801130549/http://innowi.com/)). Indeed, Innowi's website was touting its role in "helping one of its partners to introduce the worlds [sic] first smart payment device to POS market," and otherwise boasted about the benefits and features of *Poynt's product*. *Id*. at 2.

[7] *See* Manual of Patent Examining Procedure (MPEP) § 201.08 ("A continuation-in-part is an application filed during the lifetime of an earlier nonprovisional application, *repeating some substantial portion or all of the earlier nonprovisional application* and adding matter not disclosed in the earlier nonprovisional application.") (emphasis added).

[8] Innowi incorrectly suggests that Poynt's allegation that Innowi's patents are based on materials derived from the development project is a legal conclusion. Mot. at 6. It is not. *See Activldentity Corp. v. Intercede Grp. PLC*, No. C 08-4577 VRW, 2009 U.S. Dist. LEXIS 132206, at *9 (N.D. Cal. Sept. 11, 2009) (explaining that an allegation that a party failed to make required disclosures of its relevant intellectual property is "a factual statement, not a legal conclusion"). Innowi's citation to *Western Mining* is irrelevant because Poynt did not simply attempt to plead the desired *result* of its claim or the *interpretation* of some law.

[9] Poynt's CTO, Ray Tanaka, reviewed the publicly-available applications and confirmed that nearly every aspect of the described system arose from Poynt's development project. While this level of detailed discussion far exceeds what is required under the pleading standards, these details can be added by amendment if necessary.

Innowi itself was aware that the application disclosed Poynt's device, including Innowi's failure to disclose any information about Poynt's device to the U.S. Patent office. *Id.* ¶ 28. These allegations, taken together with the timing of Innowi's application, are far more than sufficient to plausibly show that Innowi's patent applications contain material belonging to Poynt and/or derived from Poynt's project. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (explaining that plausibility "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim). Innowi points to no authority suggesting that more is required. *See Actividentity Corp.*, 2009 U.S. Dist. LEXIS 132206, at *9 (explaining that a Complaint "need not contain elaborate factual recitals beyond what is necessary to state a claim").

### C. <u>Poynt's Allegations That Innowi Was Under a Duty to Maintain the Secrecy of Poynt's Trade Secrets Are Sufficient.</u>

Innowi seeks to dismiss Poynt's claims of trade-secret misappropriation by arguing that Poynt's allegations about Innowi's duty of confidentiality and the identity of Poynt's trade secrets are deficient. Mot. at 9-13. Innowi is wrong on both counts.

Poynt sufficiently alleges that Innowi had a duty to maintain the secrecy of Poynt's information. Among other things, Poynt alleges that Innowi is bound by the NDA, which forbids the disclosure of technical or business information. Complaint ¶¶ 65, 76, Ex. A at 1. *See* Section II.A, above.

Poynt also alleges facts showing that Innowi received Poynt's confidential trade secret information under circumstances giving rise to a duty to maintain their secrecy and limit their use. *See id.* ¶¶ 65, 76; *Pachmayr Gun Works, Inc. v. Olin Mathieson Chem. Corp.*, 502 F.2d 802, 808 (9th Cir. 1974) (explaining that "courts will consider the factual circumstances of each case on an individual basis, to determine whether a confidential relationship may reasonably be implied"). Specifically, Poynt alleges that Innowi's duty to protect the secrecy of Poynt's trade secrets was apparent from the fact that the Development Agreement itself is labeled "Confidential" and

expressly stated that Poynt would own all IP relating to the project.[10] Complaint ¶¶ 65, 76. Poynt also alleges that Innowi should have been aware of its duty of confidentiality based on its role as a contract developer working on an unannounced product. *Id.* Poynt further alleges that Innowi would have been aware of the expectation of confidentiality based on the exchange and protection of confidential information necessary for both sides to perform under the Development Agreement. *Id.* And finally, Innowi recognized these confidentiality obligations in its proposed draft termination agreement. *Id.*; *see also id.* Ex. D at 1 ("[REDACTED]"). These facts, taken together, are more than sufficient to allege the existence of circumstances from which Innowi should have understood it was subject to a duty to maintain confidentiality.

Innowi does not address the totality of the circumstances and instead quibbles with some of Poynt's allegations individually. Mot. at 10-11. Innowi first disregards the "Confidential" marking on the Development Agreement, arguing that this mark only dictates that the agreement itself is confidential while stressing the Development Agreement's lack of an express confidentiality provision. *Id.* Innowi misses the point. The fact that the Development Agreement is marked "Confidential" demonstrates that Poynt and Innowi were operating under the NDA, which provided that protected information should be marked as "Confidential." Complaint, Ex. A at 1. Because the parties understood the provisions of the NDA applied to Innowi and Poynt's Development Agreement, there was no need to include additional duplicative confidentiality provisions in the Development Agreement.

Innowi next suggests that the Development Agreement's term relating to Poynt's ownership of all intellectual property associated with or resulting from the project is irrelevant because it does not show that Poynt had pre-existing trade secrets that it shared with Innowi. Mot. at 10-11. But Poynt ***does*** expressly allege that it did share such secrets with Innowi. Complaint ¶ 19. And, in any event, Innowi's argument again misses the point. Because Poynt

---

[10] The fact that the agreement grants ***ownership*** of trade secrets to Poynt is fundamentally incompatible with the notion that Innowi was free to simply use, sell or disclose those trade secrets as it liked.

was to own all intellectual property—and because owning a trade secret necessarily requires that its secrecy be maintained—this provision implies a duty for Innowi to maintain the secrecy of Poynt's trade secret information.

Innowi also tries to disregard the custom of the industry and the conduct of the parties in performing under the Development Agreement. Mot. at 10-11. As Poynt alleges, it is crucial to the design manufacturing industry that contractors maintain the confidentiality of their client's information. Complaint ¶ 20. Innowi was aware of this fact, as confirmed by the fact that it marked its work product under the Development Agreement as "proprietary and confidential." *Id*. In response, Innowi only repeats its incorrect position on the absence of contractual confidentiality protections. Innowi offers no explanation as to how these factors do not give rise to an implied duty to maintain secrecy.

Finally, Innowi takes issue with Poynt's allegation that "Innowi recognized its obligation not to use or disclose Poynt's information in its response to Poynt's demand letter and in its draft termination agreement." Mot. at 11. Innowi claims that the draft termination agreement "[a]t the most" only shows that "Innowi would ensure that Whizz complied with Whizz's confidentiality obligations to Poynt." *Id*. Context shows that this is a farce. Innowi's draft first explained that the agreement's use of the name "Whizz" instead of "Innowi" was an alleged mistake and then stated that "Innowi assumes full responsibility for Whizz's compliance with the Prior Agreement and confidentiality obligations to Poynt." Complaint, Ex. D at 1. If Innowi was only agreeing to ensure Whizz's compliance with Whizz's own confidentiality obligations, was Innowi also planning to ensure that Whizz started work on a payment terminal prototype under the Development Agreement? Obviously not. In context, Innowi's words could only mean that it was acknowledging that these obligations were Innowi's, despite the interchanged names. Having thus acknowledged its confidentiality obligations, Innowi's later response to Poynt's cease and desist letter further supports this understanding. *Id*. ¶ 33.

In sum, Innowi has failed to show that Poynt insufficiently pled a contractual duty to maintain secrecy under the NDA (s*ee* Section II.B, above) and Innowi's attempts to individually disregard the various discrete facts giving rise to an implied duty are similarly unpersuasive.

Poynt's allegations, taken together, are more than sufficient to show that Innowi had a contractual and implied duty to maintain the secrecy of Poynt's trade secret information.

**D. <u>Poynt Has Identified Its Trade Secrets With the Requisite Particularity.</u>**

Poynt's Complaint has sufficiently identified the trade secrets that Innowi is accused of misappropriating. A plaintiff "need not plead with specificity what particular proprietary information was misappropriated." *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1145 (N.D. Cal. 2010). For example, in *Brocade Commc'ns. Sys. v. A10 Networks, Inc.*, the court found a plaintiff's allegations that identified its trade secrets as "the design of its [ethernet switch] products, related software including source code, customer information, and employee information" was sufficient to state a plausible claim that the plaintiff owned trade secrets. No. 10-CV-03428-LHK, 2011 U.S. Dist. LEXIS 30227, at *17 (N.D. Cal. Mar. 23, 2011). In *Autodesk, Inc. v. Zwcad Software Co.*, allegations identifying a product's software code as a trade secret were found adequate. No. 5:14-cv-01409-EJD, 2015 U.S. Dist. LEXIS 63610, at *13 (N.D. Cal. May 13, 2015); *see also Bioscience v. Sabyent, Inc.*, No. CV 10-2255-GW(SHx), 2010 U.S. Dist. LEXIS 151013, at *9, *10 (C.D. Cal. Sept. 16, 2010) (finding allegations that product "software code" was a trade secret were adequately pled). And in *W.L. Gore & Assocs., Inc. v. GI Dynamics, Inc.*, trade secrets identified as "research, development, and market opportunities," "specific financial information" and information about "specific manufacturing methods and prototypes" and other similarly described categories of information were deemed sufficient. No. CV-10-8088-PHX-GMS, 2010 U.S. Dist. LEXIS 133309, at *25-28 (D. Ariz. Dec. 15, 2010).

Poynt's allegations are just as specific—if not more—as these sufficient allegations. Poynt's Complaint identifies several trade secrets associated with the development of Poynt's Smart Terminal product. These include, but are not limited to, (1) the identity of the materials and components used in Poynt's device, (2) the design of Poynt's device's internal printed circuit board, (3) the manner in which Poynt's proprietary operating system is coded, (4) the manner in which Poynt's firmware and drivers are coded, (5) the APIs available for use on Poynt's device, and (6) the identities of Poynt's suppliers, vendors, and other service providers. Complaint ¶¶ 60, 71. Poynt also alleges that the secrecy of this information was protected through a variety of

means. *Id*. ¶¶ 61-63, 72-74. And Poynt alleges that this information garners economic value from its secrecy because it could be used by Poynt's competitors to develop competing products. *Id*. ¶¶ 63, 74. Contrary to Innowi's misrepresentations, the Complaint also alleges that Innowi had access to these trade secrets. *Id*. ¶¶ 19, 28, 35. And the Complaint alleges that Innowi misappropriated these trade secrets by using them to obtain an unfair head start in developing a competing product. *Id*. ¶¶ 27, 36, 38, 66, 77.

Innowi's authority is inapplicable here. In *Albin v. Trustmark Ins. Co.*, the plaintiff had alleged only that its "confidential information" was the trade secret. No. CV 13-5788 PSG (AGR), 2013 WL 12191722, at *9 (C.D. Cal. Nov. 25, 2013). By contrast, Poynt's allegations identify specific categories of information relating to the development and design of Poynt's payment terminal product and are nowhere near as general as the "broad-sweeping, nebulous" allegations in *Albin*. *Id.*; Complaint ¶¶ 60, 71. Poynt's allegations are more specific than many allegations that have previously been found sufficient and thus are adequately pled.

## III. CONCLUSION

Each of Innowi's scattered attempts to dismiss the causes of action set forth in Poynt's Complaint fails. For the forgoing reasons, Innowi's motion to dismiss should therefore be denied.

Dated: November 29, 2018

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Clement Seth Roberts*
CLEMENT SETH ROBERTS
JACOB M. HEATH
WILL MELEHANI
JOHANNA L. JACOB
Attorneys for Plaintiff Poynt Corporation