1  Neel Chatterjee (SBN 173985)
   *nchatterjee@goodwinlaw.com*
2  Luc Dahlin (SBN 305732)
   *ldahlin@goodwinlaw.com*
3  **GOODWIN PROCTER LLP**
   601 Marshall Street
4  Redwood City, CA 94063
   Tel.: +1 650 752 3100
5  Fax.: +1 650 853 1038

6  Attorneys for Defendant

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| POYNT CORPORATION, | Case No. 5:18-cv-05814 |
|---|---|
| Plaintiff, | **DEFENDANT INNOWI, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)** |
| v. | |
| INNOWI, INC., | Date:      February 14, 2019<br>Time:      9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge:     Hon. Beth L. Freeman |
| Defendant. | |

# TABLE OF CONTENTS

I.  INTRODUCTION ......................................................................................................... 1

II. ARGUMENT ................................................................................................................ 1

    A.  Complaint Fails To Plead Breach of NDA ......................................................... 1
        1.  No Plausible Allegations That Innowi Is Alter-Ego of Whizz .................. 1
        2.  No Plausible Allegations That NDA Was Assigned To Innowi ................ 4
    B.  Complaint Fails To Plead Breach of the So-Called Agreement ........................... 7
        1.  No Plausible Allegations That Innowi Patents Were Derived From Work Performed Under The Agreement ........................................................ 7
        2.  No Plausible Allegations That Innowi Filing A Patent Application Breached The Agreement .................................................................... 9
        3.  The So-Called Agreement Is Unenforceable .......................................... 10
    C.  Complaint Fails to Plead Misappropriation of Trade Secrets ............................ 11
        1.  No Plausible Allegations That Innowi Had Duty To Maintain Secrecy of Poynt Information ........................................................................... 12
        2.  Complaint Does Not Sufficiently Allege What Trade Secrets Were Misappropriated ................................................................................. 14

III. CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................... 9

*Cent. Inst. for Experimental Animals v. Jackson Lab.*,
    726 F. Supp. 2d 1045 (N.D. Cal. 2010) ........................................................................... 7

*Chunghwa Telecom Glob., Inc. v. Medcom, LLC*,
    No. 5:13-CV-02104 HRL, 2013 WL 5688941 (N.D. Cal. Oct. 16, 2013) ................. 3, 4

*Corsini v. Canyon Equity, LLC*,
    No. C 10-2061 JL, 2011 WL 13247445 (N.D. Cal. Feb. 14, 2011) ............................... 2

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
    No. C-09-00511 RMW, 2011 WL 1375164 (N.D. Cal. Apr. 12, 2011) ....................... 3

*Emazing Lights LLC v. De Oca*,
    No. SACV151561AGEX, 2016 WL 3658945 (C.D. Cal. Jan. 7, 2016) ............... 14, 15

*Harrison v. Milligan*,
    No. C 09-4665 SI PR, 2012 WL 1835428 (N.D. Cal. May 21, 2012) ........................ 2

*Sandoval v. Ali*,
    34 F. Supp. 3d 1031 (N.D. Cal. 2014) ........................................................................... 4

*Stewart v. Screen Gems-EMI Music, Inc.*,
    81 F. Supp. 3d 938 (N.D. Cal. 2015) ............................................................................. 3

*Universal Stabilization Techs., Inc. v. Advanced Bionutrition Corp.*,
    No. 17CV87-GPC(MDD), 2018 WL 1605172 (S.D. Cal. Apr. 3, 2018) .................... 8

*Vivato Tech. v. Ruckus Wireless, Inc.*,
    No. SACV1700596AGJCGX, 2018 WL 3156851 (C.D. Cal. Mar. 30, 2018) ........... 3

**California Cases**

*Ousley v. Fid. Nat'l Fin.*,
    No. A120692, 2009 Cal. App. Unpub. LEXIS 7878, 2009 WL 3135170
    (Cal. Ct. App. Sept. 30, 2009) ......................................................................................... 6

*PMC, Inc. v. Porthole Yachts, Ltd.*,
    65 Cal. App. 4th 882 (1998) .......................................................................................... 11

*Sabo v. Fasano*,
    154 Cal. App. 3d 502 (1984) ........................................................................................... 6

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................1

Fed. R. Evid. 201 ......................................................................................................................2

Fed. R. Evid. 801 ......................................................................................................................2

Fed. R. Evid. 802 ......................................................................................................................2

I.     **INTRODUCTION**

The Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because Poynt has failed to plead sufficient facts to state a plausible claim. Poynt's Opposition brief misconstrues Innowi's arguments and attempts to remedy the Complaint's deficient factual allegations by improperly asking the Court to take judicial notice of new allegations not present in the pleading.

Based on the facts alleged in the Complaint, Poynt has failed to plausibly plead that: (1) Innowi breached an NDA where Innowi is not an alter-ego of Whizz and the NDA contained an explicit provision prohibiting assignment of the NDA without prior written consent; (2) Innowi breached the so-called Agreement where Poynt pled no plausible allegations that Innowi's patent application, filed months after Poynt terminated the Agreement, claimed information assigned to Poynt under the Agreement; and (3) Innowi misappropriated "several" of Poynt's trade secrets, where Poynt has not sufficiently alleged what was misappropriated or that Innowi had any confidentiality obligations. All of these claims should be dismissed.

II.    **ARGUMENT**

Poynt's Complaint raises four causes of action: (1) breach of contract for an alleged violation of an NDA between Poynt and Whizz, (2) breach of contract related to the Agreement, (3) federal trade secret misappropriation under the Defend Trade Secrets Act (DTSA), and (4) state trade secret misappropriation under the California Uniform Trade Secrets Act (CUTSA). Poynt's Complaint fails to state a claim as to each claim as discussed below.

　　A.     **Complaint Fails To Plead Breach of NDA**

Poynt's cause of action for breach of the NDA should be dismissed because: (1) Poynt has failed to sufficiently plead Innowi is an alter-ego of Whizz, and (2) Poynt has failed to sufficiently plead that the NDA was assigned to Innowi.

　　　　1.     **No Plausible Allegations That Innowi Is Alter-Ego of Whizz**

Poynt has failed to allege sufficient facts to invoke the alter ego doctrine. In its Opposition, Poynt effectively concedes that it has not met its burden and attempts to supplement its pleading by improperly asking the Court to take judicial notice of additional alleged facts. The

1

Court should reject Poynt's attempt to rewrite its Complaint. Poynt's newly minted allegations also fail for two reasons: (1) these facts are not proper for judicial notice, and (2) the factual allegations are still insufficient to assert alter-ego liability.

First, the Court should decline to take judicial notice of the additional facts from Poynt's Opposition because Poynt fails to meet its burden on judicial notice. "The party requesting judicial notice bears the burden of persuading the court that the particular fact is not reasonably subject to dispute and is capable of immediate and accurate determination by resort to a source whose accuracy cannot reasonably be questioned." *Harrison v. Milligan*, No. C 09-4665 SI PR, 2012 WL 1835428, at *1 (N.D. Cal. May 21, 2012). Federal Rule of Evidence 201 further "forbids taking judicial notice of facts, even if indisputable, that are not common knowledge and are not shown by a 'source whose accuracy cannot reasonably be questioned.'" *Corsini v. Canyon Equity, LLC*, No. C 10-2061 JL, 2011 WL 13247445, at *5 (N.D. Cal. Feb. 14, 2011).

Poynt has failed to show that any of the new allegations are "common knowledge" or come from a "source whose accuracy cannot reasonably be questioned." For example, Exhibit 3 to the Melahani Declaration is a print-out of a web page from a third party, "EquityNet.Com," that allegedly contains a post by a Whizz employee referring to Innowi as "part of my team." Dkt. No. 29-1, Ex. 3. Neither Poynt's brief nor the Melahani Declaration address how EquityNet.Com is a "source[] whose accuracy cannot reasonably be questioned" or whether the fact that Innowi has been called "part of [Whizz's] team" is "common knowledge." Even more egregiously, this alleged post by a Whizz employee is a clear example of inadmissible hearsay; Poynt wants the Court to take judicial notice of the fact that Innowi is "part of [Whizz's] team" because a third-party Whizz employee once allegedly posted such a statement on a website. *See* Fed. R. Evid. 801, 802. Other facts that Poynt asks the Court to take judicial notice of are similarly flawed. For example, Poynt fails to explain how the fact that Innowi and Poynt share an address is "common knowledge" or comes from a "source[] whose accuracy cannot reasonably be questioned." The Court should reject Poynt's attempts to invoke judicial notice where it has failed to meet its burden.

1  The new allegations are also insufficient to show alter-ego liability because they do not show "such a unity of interest and ownership that the separate personalities of the two corporations no longer exist." The new allegations merely plead that Innowi is "affiliated" with Whizz, shares an address with Whizz within a corporate business park, and has two of the same directors as Whizz. *See, e.g.*, *Chunghwa Telecom Glob., Inc. v. Medcom, LLC*, No. 5:13-CV-02104 HRL, 2013 WL 5688941, at *4 (N.D. Cal. Oct. 16, 2013) (holding that allegations that party was "an authorized affiliate […] is insufficient to establish that an alter ego relationship existed."). This is not enough.

"[T]he unity of interest prong of the alter ego test, even under the *prima facie* standard[,] **requires a very high showing**, and the Ninth Circuit has recognized, for example, that even where a parent has 100% control of a subsidiary through stock, the companies are run by the same senior officers and directors, and the companies share the same offices, that does not necessarily mean that a subsidiary is the alter ego of the parent." *XR Comms., LLC dba Vivato Tech. v. Ruckus Wireless, Inc.*, No. SACV1700596AGJCGX, 2018 WL 3156851, at *6 (C.D. Cal. Mar. 30, 2018) (citing *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003)) (emphasis added). In assessing whether there is a unity of interest, courts consider: "[1] the commingling of funds and other assets of the entities, [2] the holding out by one entity that it is liable for the debts of the other, [3] identical equitable ownership of the entities, [4] use of the same offices and employees, [5] use of one as a mere shell or conduit for the affairs of the other, [6] inadequate capitalization, [7] disregard of corporate formalities, [8] lack of segregation of corporate records, and [9] identical directors and officers." *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 960–61 (N.D. Cal. 2015) (quoting *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014)). It is also well-settled that "[c]ommon ownership alone is insufficient to disregard the corporate form." *Id.*

Out of the nine factors listed above, Poynt's only relevant allegation, even including the newly alleged facts, is that Whizz and Innowi are located in the same business park in Santa Clara – a business park shared by other corporations as well. This allegation is insufficient as a matter of law. *See Eclectic Properties E., LLC v. Marcus & Millichap Co.*, No. C-09-00511 RMW, 2011

3

1  WL 1375164, at *6 (N.D. Cal. Apr. 12, 2011) ("Nor does 100% control through stock ownership
2  or the fact that companies share the same offices necessarily make companies alter egos.").
3      Poynt's other allegations actually support a finding that Innowi *is not* an alter-ego of
4  Whizz.  For example, Poynt's allegations regarding two shared directors does not evidence that
5  each party has "identical" directors and officers; indeed, the exhibits attached to Poynt's
6  Opposition evidence that Innowi and Whizz *do not* have identical directors and officers.  Dkt. No.
7  29-1, Exs. 1-2 (showing *none* of Innowi's officers [CEO, Secretary, CFO] are listed as officers or
8  directors at Whizz); *see also Sandoval*, 34 F. Supp. 3d at 1040.  Finally, the fact that someone
9  from Whizz purportedly wrote that Innowi was "[p]art of my team" does not support a finding that
10 Whizz and Innowi are alter-egos; at most, it suggests an affiliation between the two companies,
11 which has been found insufficient to invoke the alter-ego doctrine.  *See, e.g.*, *Chunghwa Telecom*,
12 2013 WL 5688941, at *4.  The Complaint thus fails to sufficiently plead alter-ego liability, even if
13 the Court were to take judicial notice of the newly minted facts alleged in Poynt's opposition.
14            2.      No Plausible Allegations That NDA Was Assigned To Innowi
15     Poynt has also failed to plausibly plead that Innowi had obligations under the NDA
16 because it was assigned to Innowi.  *See* Dkt. No. 24-4 ("Mot.") at 4-5.  There are no factual
17 allegations that Whizz ever assigned the NDA to Innowi and the NDA itself explicitly prohibits
18 such an assignment "without [Poynt's] prior written consent."  Compl., Ex. A at 2.
19     Poynt's Opposition concedes that there is no written assignment and instead alleges that
20 Poynt *implicitly* waived the provision requiring it to provide prior written consent because the
21 assignment was "indisputably" for Poynt's benefit and the NDA was silent as to waiver.  Opp. at
22 3-4.  In particular, Poynt argues that "[b]ecause the NDA is silent on the issue of waiver, Poynt
23 was free to allow Innowi to assume Whizz's obligations under the NDA without requiring a
24 formal writing" and "Poynt waived it through its conduct."  *Id.* at 4.  Poynt's argument is
25 incorrect.
26     Poynt concedes three key facts: (1) Whizz *never even attempted* to assign the NDA to
27 Innowi; (2) the NDA explicitly required written consent and explicitly stated that any attempted
28

4

assignment would be invalid without such consent; and (3) Poynt never explicitly waived the written consent requirement. These three facts are fatal to Poynt's claim.

First, Poynt has failed to plausibly plead that Whizz even *attempted* to assign the NDA to Innowi and has conceded that there is no written assignment or other evidence of an assignment. The only relevant allegation in the Complaint is that "the evidence is likely to show after a reasonable opportunity for further investigation or discovery, Whizz expressly or impliedly assigned its rights and obligations under the NDA to Innowi and Innowi assumed all rights and obligations under the NDA from Whizz." Compl. ¶ 46. There are no factual allegations to support this conclusory legal statement, and Poynt's Opposition fails to offer any rebuttal. In fact, Poynt provides no writing showing an agreement to assign.

Second, Poynt's "implicit waiver" argument is contrary to the explicit language of the NDA.[1] Such an interpretation would render the assignment clause meaningless and is contrary to the parties' intentions clearly enumerated in the NDA. Further, the NDA allows for modification in writing only. Compl., Ex. A at 2. A court may not infer an "implied waiver" term because the NDA has an integration clause which makes clear that no terms can be inferred. *Id.*

Third, contrary to Poynt's conclusory statement that the provision requiring explicit written approval before assigning the NDA to a third-party was "indisputably for Poynt's benefit," the provision actually benefited *both* parties because *neither* party could assign its obligations under the NDA to a third-party without written approval from the other party. Compl., Ex. A at 2 ("Neither party may assign this Agreement, in whole or in part, without the other party's prior written consent, and any attempted assignment without such consent will be void"). Thus the assignment provision benefitted Whizz where it limited what Poynt could do without Whizz's explicit written approval.

---

[1] Poynt also notes, in a footnote, that "the same result could be reached through finding an implied modification of the NDA." Opp. at 4, fn. 3. Poynt does not explain how "implied modification" might apply here, let alone analyze what the parties' "clear intentions" are under the "implied modification" doctrine. To the extent the Court is willing to consider Poynt's argument on implied modification of the NDA, the Complaint fails to plead sufficient facts showing that it was the "clear intention" of *both* parties to modify the NDA provision regarding assignment to allow for an assignment without written consent.

1    Poynt's two authorities supporting its argument are not applicable here.  Poynt cites *Sabo
2    v. Fasano*, 154 Cal. App. 3d 502, 505 (1984) and *Ousley v. Fid. Nat'l Fin.*, No. A120692, 2009
3    Cal. App. Unpub. LEXIS 7878, at *15 (Cal. Ct. App. Sept. 30, 2009) for the propositions that a
4    party may waive conditions placed in a contract for its own benefit and "an implied waiver of a
5    right is based on conduct so inconsistent with an intent to enforce the right that the court infers
6    intentional relinquishement of the right."  Opp. at 3-4, citing *Sabo*, 154 Cal. App. 3d at 505;
7    *Ousley*, 2009 Cal. App. Unpub. LEXIS 7878, at *15.  Neither case dealt with an assignment
8    provision, an integration clause that forbids inferring terms, an implicit waiver of a provision *that
9    benefitted both parties*, or an implicit waiver that would serve to place obligations on a non-
10   contracting third-party.
11   For example, the court in *Sabo* found that a first party waived a "time limit" for another
12   party to accept a proposed contract where the first party executed the contract after the "time
13   limit" had expired.  *Sabo*, 154 Cal. App. 3d at 505.  The Court first held that "[t]he provision in an
14   offer specifying the means of acceptance," (i.e., the "time limit" provision), solely benefitted the
15   first party and thus "may be waived by the offerer."  *Id.*  The court held that while such a "time
16   limit" constraint might have resulted in the proposed contract offer being rescinded, the fact that
17   the first party thereafter ratified the contract was clear evidence that the first party had waived its
18   right to rescind the offer at the expiration of the "time limit."  *Id.*  While the "time limit" in *Sabo*
19   unilaterally benefited the first party, the assignment provision in the NDA bilaterally benefitted
20   both parties as it explicitly prevented *each* party from assigning the NDA without the other's
21   approval.  Compl., Ex. A at 2.
22   In *Ousley*, the court held that plaintiff had *not* implicitly waived its right to sue for fraud
23   under a previous contract despite later executing a settlement agreement.  *Ousley v. Fid. Nat'l
24   Fin.*, No. A120692, 2009 WL 3135170, at *11 (Cal. Ct. App. Sept. 30, 2009).  As an initial matter,
25   neither case is analogous to the situation here; both cases dealt with a provision that *solely
26   benefitted a single party*.  By contrast, the assignment provision in the NDA benefitted both
27   parties by restricting actions one could take without written approval from the other.  Further,
28   neither of Poynt's cases addressed a situation where an "implied waiver" would serve to place

6

obligations on a third-party or where an "implied waiver" directly contradicted a clause in an existing contract that required an explicit waiver.  Indeed, the only case that Poynt cited to support its argument for an implicit waiver, *Ousely*, held that there was *no* implicit waiver because the plaintiff's conduct was not so inconsistent with an intent to enforce their right that it could infer relinquishment of the right.  Simply put, Poynt has cited no authorities, and made no arguments, that a party may *implicitly* waive a contract provision that benefitted both parties and that required an *explicit* written waiver, particularly where doing so would cause a non-contracting third-party to suddenly have obligations under the contract.

### B. Complaint Fails To Plead Breach of the So-Called Agreement

Poynt's Opposition incorrectly argues that it has alleged sufficient facts to plausibly plead that Innowi's patent applications contain inventions that were developed during the Project and that Innowi breached the Agreement by filing the patent applications.

The Complaint fails to plead breach of the so-called Agreement based on Innowi's patent filings where: (1) it has not plausibly pled that Innowi's patent claims were "derived as a result of th[e] project"; (2) the patent applications were filed months and/or years after Innowi's obligations under the Development Project ("Project") were terminated; and (3) the so-called Agreement was an illusory contract.  Poynt's Opposition shows nothing in the issued patent claims that originated under the so-called Agreement.

#### 1. No Plausible Allegations That Innowi Patents Were Derived From Work Performed Under The Agreement

Poynt has failed to plausibly plead that the claimed subject matter of Innowi's patents was developed during the Project.  In its Opposition, Poynt cites three paragraphs from the Complaint to support its argument that it "has plead numerous facts showing that the material in Innowi's patent applications was derived from" the Project.  Opp. at 9-10 (citing Compl. ¶¶ 18-19, 28). None of these paragraphs pleads facts that plausibly suggest that the inventions claimed in Innowi's patents were derived from the Project.  Importantly, Poynt fails to plead that any material derived from the Project is in the *claims* of the Innowi patent, as opposed to merely appearing in the body of the application.  *See, e.g.*, *Cent. Inst. for Experimental Animals v. Jackson Lab.*, 726 F.

7

Supp. 2d 1045, 1047 (N.D. Cal. 2010) (holding that the claims of a patent, and not the specification, are the sole measure of the patentee's intellectual property rights).

In *Universal Stabilization Techs., Inc. v. Advanced Bionutrition Corp.*, No. 17CV87-GPC(MDD), 2018 WL 1605172, at *1 (S.D. Cal. Apr. 3, 2018), for example, a plaintiff claimed he had intellectual property rights in defendant's patent where his "previously developed know-how [that he confidentially shared with defendant] became the claimed subject matter of [defendant's] patent." *Id.* The court held that a claim-by-claim analysis was necessary to determine whether the plaintiff's know-how was actually found in any of the claims of the patent. *Id.*

Here, Poynt has failed to plead that any material derived from the Project is in the claims of the Innowi patent. This failure to plead that the *claims* of the patent contain information derived from the Project is fatal to Poynt's breach of contract claim because Poynt cannot allege that Innowi has breached the IP ownership provision of the Agreement without first showing that Innowi's patent claims ownership over the information supposedly developed during the Project.

For example, paragraphs 18 and 19 of the Complaint allege that Innowi lacked expertise in point-of-sales (POS) devices prior to the Project and that during the project, Innowi had access to a number of broad categories of confidential Poynt information. Compl. ¶¶ 18-19. Paragraph 28, however, does not allege that Innowi used any of the categories of confidential information listed in paragraph 19 in its patent applications or even that *any* Poynt information is found *in the claims* of the patent. Compl. ¶ 28. Instead, the Complaint merely alleges that "[t]he Innowi *application* discloses details about the design of Poynt's smart terminal device [using a secure process for payments and separate process for applications]." *Id.* (emphasis added). While the paragraph includes the conclusion that "[t]his patent application is derived from Innowi's work on Poynt's Development Project and reflects inventions conceived by Poynt's own employees rather than by Innowi's employees," there are no factual allegations that any of this information is in the patent *claims*, rather than merely the body of the patent application. Further, Poynt fails to sufficiently plead that the use of two separate processors was developed during the Project, was considered assignable/protectable IP during the project, or was conceived by anyone working under the so-

1   called Agreement.  Indeed, Poynt's allegations do not clearly state whether the claimed subject
2   matter of the Innowi patent application was allegedly conceived by Innowi during the Project or
3   was allegedly conceived by anyone working under the so-called Agreement.  *See* Compl. ¶ 28.

4   Further, Poynt's allegations also are not plausible in view of the timeline alleged in the
5   Complaint.  The Complaint alleges that the Project began in June 2014 and was terminated in
6   December 2014, running a total of six to seven months.  Compl. ¶¶ 14, 24.  The Complaint next
7   alleges that Innowi filed its first patent application in September 2015, more than nine months
8   after Poynt terminated the project.  Compl. ¶ 28.  Thus the gap between the termination of the
9   Project and the filing of the patent application was 150% the length of the total time spent on the
10  Project.  In view of this timeline, it is not plausible that the claimed invention was developed in
11  the six month project rather than during the subsequent nine month gap leading up to the patent
12  filing.  Poynt's pleadings and opposition simply ignore this fact.

13  Overall, Poynt attempts to plead: (1) that it provided Innowi with certain IP related to POS
14  systems during the five-to-six month project, and (2) that Innowi, nine months after the Project
15  was terminated, filed a patent application focusing on a different aspect of a POS device.  Poynt
16  entirely ignores any analysis showing that any information developed during the Project is in the
17  *claims* of the patent.  These factual allegations support Innowi's position that it independently
18  developed the patented technology after Poynt terminated the Project.  It is not plausible, under
19  these facts, that Innowi developed the invention during the six-month Project, left the invention
20  unprotected for an additional nine months after the project ended while performing no additional
21  independent work, and then filed a patent application.  *See Bell Atl. Corp. v. Twombly*, 550 U.S.
22  544, 556 (2007).

23              2.   <u>No Plausible Allegations That Innowi Filing A Patent Application Breached
24                   The Agreement</u>

25  Here, Poynt alleges that Innowi breached the Agreement by failing to assign a patent
26  application that was filed nine months after the Agreement had been terminated.  In its Opposition,
27  Poynt misconstrues Innowi's argument, stating that "[a]t the core of Innowi's argument is the
28  assumption that Poynt's right to own all of the intellectual property associated with the

9

REPLY ISO INNOWI, INC.'S MOTION TO DISMISS                    CASE NO. 5:18-CV-05814
ACTIVE/97667750.3

1  development project attached only to patent applications filed during the term of the project."
2  Opp. at 7-8.  This is incorrect; Innowi's argument is that the filing of the patent application, nine
3  months after Poynt terminated the Agreement, *cannot be a breach of the Agreement* as a matter of
4  law.  Poynt attempts to conflate Poynt's IP ownership rights under the Agreement with its right to
5  the patent application filed after the Agreement was terminated.

6        Innowi and Poynt appear to agree on the legal principles: (1) there were no IP rights to
7  assign prior to the filing of the patent application (which occurred nine months after the
8  Agreement was terminated); and Innowi was not obligated to assign any IP that was created *after*
9  the termination of the Agreement.  *See* Mot. at 8-9; Opp. at 8.  Both parties were excused from
10 future obligations as soon as Poynt terminated the Agreement; Poynt no longer was obliged to pay
11 Innowi for future work and Innowi did not have any obligations to assign IP to Poynt that came
12 into existence after Poynt terminated the Agreement/Project.

13       For the purposes of breach of contract, it does not matter whether Innowi's patent
14 application contained information derived from the Project.  What matters is whether Innowi
15 breached the ownership provision of the Agreement by failing to assign protectable IP to Poynt
16 that was developed prior to the termination of the project.  *See* Compl., Ex. B.  Innowi's
17 obligations under the Agreement were finalized as soon as Poynt terminated the agreement;
18 Innowi was bound by any obligations that had arisen by that point *but no new obligations could*
19 *thereafter arise*.  Mot. at 8-9 (citing *Petrus v. New York Life Ins. Co.*, No. 14-CV-2268 BAS JMA,
20 2015 WL 3796221, at *3 (S.D. Cal. June 18, 2015)).  Any IP that did not exist at that time could
21 not have been transferred to Poynt and any future obligations to transfer later-created IP were
22 terminated along with the Agreement.  *See* Mot. at 8-9.  Because the patent application was not
23 filed until nine months after the Agreement was terminated, there was no protectable IP, and no IP
24 rights, derived during the life of the Agreement that Innowi could have assigned to Poynt.  This
25 count should be dismissed.

26       3.      <u>The So-Called Agreement Is Unenforceable</u>
27       The Court should also dismiss the breach of contract claim because the Agreement is
28 unenforceable.  *See* Mot. at 6-8.  In its Opposition, Poynt argues that the Agreement is enforceable

10

REPLY ISO INNOWI, INC.'S MOTION TO DISMISS       CASE NO. 5:18-CV-05814
ACTIVE/97667750.3

because Innowi benefitted from the Agreement and Poynt acted reasonably and in good-faith with respect to its unilateral right to terminate the contract. Opp. at 4-7. Poynt has not met its pleading requirements on these points.

First, Poynt alleges that the Agreement is enforceable because Innowi benefitted from the Agreement. Opp. at 6 (citing Compl., ¶ 23). Poynt's allegations in the Complaint, however, do not make clear that Innowi benefitted from the Agreement. The paragraph of the Complaint that Poynt cites states that Innowi received payments during the course of the Project – *not* that the payments were made pursuant to the Agreement. The Agreement itself postulates the existence of other contracts or agreements and it is entirely unclear from the Complaint whether Innowi ever benefitted from the Agreement rather than another agreement between the parties. *See* Compl., Ex. B (noting that the product to be developed by Whizz/Innowi includes additional features, timelines, and payments, not included in the Agreement).

Next, Poynt alleges that the Agreement is not illusory because Poynt's unilateral ability to subjectively terminate the contract at any point and not fulfill its obligations should be evaluated under objective reasonableness and good faith standards. Opp. at 6-7. Under California law, however, an implied covenant must never vary the express terms of the parties' agreement. *PMC, Inc. v. Porthole Yachts, Ltd.*, 65 Cal. App. 4th 882, 891, 76 Cal. Rptr. 2d 832 (1998) (finding no illusory contract only because party had other obligations it could not unilaterally terminate). Here, the terms of the Agreement allowed Poynt to subjectively and completely terminate the contract at any point (*see* Mot. at 7-8) and applying an implied covenant would vary the express terms of the agreement. The Court should thus not apply an implied covenant and instead find that the subjective right to terminate the contract at any point render the contract unenforceable.

**C.     Complaint Fails to Plead Misappropriation of Trade Secrets**

The count for misappropriation of trade secrets should be dismissed for two independent reasons: (1) Innowi had no duty to maintain secrecy of any Poynt information; and (2) the Complaint fails to sufficiently allege which trade secrets were supposedly misappropriated. *See* Mot. at 9-13.

1. <u>No Plausible Allegations That Innowi Had Duty To Maintain Secrecy of Poynt Information</u>

The count for misappropriation of trade secrets should be dismissed because Poynt has not sufficiently or plausibly plead that Innowi had a duty to maintain secrecy of any Poynt information. In its Opposition, Poynt argues that: (1) Innowi is bound by the NDA, (2) the Agreement is marked as confidential, (3) that Innowi should have been "aware" of confidentiality obligations, and (4) Innowi "recognized" its confidentiality obligations in its proposed draft termination agreement. Opp. at 10-13. Poynt is wrong on each count.

First, as explained above, Innowi was not bound by the NDA. Innowi did not sign the NDA, is not an alter-ego of Whizz, and any agreement purporting to assign the NDA to Innowi was invalid without Poynt's explicit written consent. *See supra*, § II(A). Additionally, the fact that an NDA exists does not necessarily mean that specific information transmitted from Poynt to Innowi was confidential or protectable -

Second, the fact that the Agreement is stamped as "Confidential" does not somehow oblige Innowi to protect other Poynt information. As explained in the opening motion, the Agreement imposes *no obligations* on Innowi with respect to Poynt information – the "confidentiality" designation is clearly limited to the Agreement itself. Indeed, when filing the Agreement under seal in this matter, Poynt has repeatedly stated that the Agreement is marked as Confidential because it contains "sensitive information" that includes "cost requirements, prices, production cycles, payment structures and other related financial information." *See* Dkt. No. 3-1. Poynt has marked this document as confidential not because it creates some obligation related to Poynt's technical trade secrets, but because "[t]he publication of this information would be harmful to Poynt as it would permit Poynt's future contractors to have a more favorable negotiating position against Poynt in future dealings. The publication of this agreement would also be harmful to Poynt because it would allow Poynt's competitors to infer information about its costs and thereby gain an unfair pricing advantage." *Id.* Poynt cites no support for its argument that a business agreement marked as "confidential," such as the Agreement here, somehow creates additional

confidentiality obligations regarding technical information even though the agreement is completely silent as to these supposed obligations.

Third, Poynt's allegations that Innowi should have been "aware" of unstated confidentiality obligations due to customs of the industry is merely conclusory. Opp. at 12; Compl. ¶ 20. To support this argument, Poynt alleges that "the work product that Innowi provided to Poynt frequently included confidentiality markings designating the material 'proprietary and confidential.'" *Id.* At most, this supports a finding that Innowi considered some of its own work product to be confidential; it does not support any inference that Innowi was aware that Poynt was sharing confidential information with Innowi or that Innowi had unstated confidentiality obligations.

Finally, Exhibit D to the Complaint shows that, contrary to Poynt's allegation that Innowi "recognized" its confidentiality obligations in its proposed draft termination agreement, Innowi proposed an agreement that acknowledged Whizz was obligated (under the NDA) to maintain confidentiality of Poynt's information. Poynt rejected this agreement. Compl. ¶ 25. Poynt attempts to obfuscate this issue by conflating the NDA and the Agreement and by failing to note that they rejected proposed termination agreement. Opp. at 12.

Innowi's draft termination agreement evidences two things: (1) the Agreement should have been between Innowi and Poynt, *not* Whizz and Poynt; and (2) Innowi offered to ensure that Whizz would abide by its confidentiality obligations under the NDA. Compl., Ex. D. Indeed, Innowi explicitly *offered* to assume full responsibility for "Whizz's compliance with the [Agreement]" *and* Whizz's "confidentiality obligations to Poynt" under the NDA. Poynt rejected this offer. Compl. ¶ 25. If Innowi had believed that the Agreement had imposed independent confidentiality obligations, it merely would have offered to assume full responsibility for the Agreement, rather than offering to assume responsibility for Whizz's compliance with the Agreement *and* Whizz's compliance with its confidentiality obligations. Overall, Poynt has failed to plead that Innowi had its own confidentiality obligations under either the NDA, which it was not a party to, or under the Agreement, which had no provisions/obligations of confidentiality.

13

### 2. Complaint Does Not Sufficiently Allege What Trade Secrets Were Misappropriated

The Court should also dismiss the trade secret count because Poynt has failed to sufficiently allege what trade secrets were misappropriated. Rather than specifically enumerate which trade secrets Innowi has allegedly misappropriated, Poynt includes a laundry list of broad possible trade secrets such as "design documentations for its developing product, including […],"  "source code for its proprietary operating system, including[…]," "lists of information crucial to the development and eventual success of Poynt's product, including […]." (Compl. ¶ 60). Poynt couples this broad, non-exclusive list with the allegation that "[a]s a design manufacturing contractor involved in the development of hardware for the Poynt Smart Terminal device Innowi acquired knowledge and custody of *several* of Poynt's trade secrets and developed trade secrets (both positive and negative) that belonged to Poynt under the terms of the Development Agreement." Compl. ¶ 64 (emphasis added). The Complaint is silent as to *which* trade secrets Innowi allegedly misappropriated and/or developed.

Courts have rejected similar "laundry list approaches to trade secret definitions" that "appear to have the unlimited reach present here." *Emazing Lights LLC v. De Oca*, No. SACV151561AGEX, 2016 WL 3658945, at *2 (C.D. Cal. Jan. 7, 2016) (citing *Nextdoor.Com, Inc. v. Abhyanker*, No. C-12-5667 EMC, 2013 WL 3802526, at *5 (N.D. Cal. July 19, 2013)). The court in *Emazing*, for example, dismissed a misappropriation of trade secrets claim where the plaintiff's alleged broad categories of trade secrets such as "source code for its [relevant] products, programming technology, USB technology, firmware for such technology, [etc.]" that "include[d] but [was] not limited to" specifically enumerated items. *Id.* The court held that such disclosures were inadequate where the alleged trade secrets used "broad terms like USB and programming technology" and where the list of alleged trade secrets "include[s]" but is not limited to the enumerated items. *Id.* The court held that "[a]ny piece of information could potentially be labelled a trade secret under this definition." *Id.*

Similarly, here, Poynt's list of alleged trade secrets lists broad categories of information, such as "design documentation" and "source code" that "includ[es]," but is not limited to, specific

14

enumerated trade secrets.  Compl. ¶¶ 60, 71.  Indeed, some of Poynt's alleged trade secrets are defined so broadly that it is impossible to tell what is being claimed, such as when they allege trade secret misappropriation of "lists of information crucial to the development and eventual success of Poynt's product."  Compl. ¶ 60.  Just as in *Emazing*, "[a]ny piece of information could potentially be labelled a trade secret under this definition."  This non-exhaustive list, based on unduly broad categories of information, is insufficient to put Innowi on notice of what it has allegedly misappropriated.  *See, e.g.*, *Emazing*, 2016 WL 3658945, at *2.  While "you shouldn't have to disclose the Coke formula to sue for its misappropriation[, Plaintiff] should be able to provide more specificity without providing too much specificity."  *Id.*

### III. CONCLUSION

For the above stated reasons, the Court should dismiss the Complaint for failure to state a claim.

Dated: December 6, 2018                              Respectfully submitted,

By: */s/ Neel Chatterjee*
Neel Chatterjee (SBN 173985)
*nchatterjee@goodwinlaw.com*
Luc Dahlin (SBN 305732)
*ldahlin@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel.: +1 650 752 3100
Fax.: +1 650 853 1038

*Attorneys for Defendant*

# **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **December 6, 2018**.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.  Executed on **December 6, 2018**.

/s/   *Neel Chatterjee*
NEEL CHATTERJEE