Neel Chatterjee (SBN 173985)
*nchatterjee@goodwinlaw.com*
Luc Dahlin (SBN 305732)
*ldahlin@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel.: +1 650 752 3100
Fax.: +1 650 853 1038

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| POYNT CORPORATION, | Case No. 5:18-cv-05814 |
| Plaintiff, | **DEFENDANT INNOWI, INC.'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6) AND MOTION TO STRIKE PURSUANT TO F.R.C.P. 12(f)** |
| v. | |
| INNOWI, INC., | Date: TBD |
| Defendant. | Time: 9:00 a.m. |
| | Courtroom: 3, 5th Floor |
| | Judge: Hon. Beth L. Freeman |

## REDACTED PUBLIC VERSION OF DOCUMENT SOUGHT TO BE SEALED

# Table of Contents

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    LEGAL STANDARD ............................................................................................... 1

III.   ARGUMENT ............................................................................................................ 2

     A.    The Claim for Breach of the Non-Disclosure Agreement Should Be
         Dismissed ............................................................................................................ 3

         1.    FAC Does Not Allege Innowi Was A Party To The Fully
             Integrated NDA ...................................................................................... 4

         2.    FAC Fails To Plead Equitable Estoppel .................................................. 5

         3.    Poynt Has Not Alleged Agency, Ostensible Agency, Or
             Ratification ............................................................................................. 7

     B.    The Claim for Breach of the Term Sheet Should Be Dismissed ..................... 10

         1.    Innowi's Patent Applications Do Not Claim Poynt's Intellectual
             Property ................................................................................................. 11

         2.    Allegations That Innowi Breached the Term Sheet By
             Misappropriating Trade Secrets Are Deficient ..................................... 15

     C.    Count for Misappropriation of Trade Secrets Should Be Dismissed ............. 15

         1.    FAC And 2019.210 Disclosures Do Not Sufficiently Identify
             Valid Trade Secrets .............................................................................. 16

         2.    FAC Does Not Plausibly Allege Any Trade Secrets Were
             Misappropriated .................................................................................... 18

     D.    The Court Should Strike Poynt's Allegations of Fraud And Willful And
          Malicious Misappropriation Should Under Rule 12(f) ................................... 19

IV.    CONCLUSION ...................................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                                                                           **Page(s)**

*Albin v. Trustmark Ins. Co.*,
   No. CV 13-5788 PSG (AGR), 2013 WL 12191722 (C.D. Cal. Nov. 25, 2013)................ *passim*

*Amerisourcebergen Drug Corp. v. Am. Associated Druggists, Inc.*,
   No. 05-5927, 2008 WL 248933 (E.D. Pa. Jan. 29, 2008) ........................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................................2

*Conservation Force v. Salazar*,
   646 F.3d 1240 (9th Cir. 2011).................................................................................................1

*Eshelman v. Orthoclear Holdings, Inc.*,
   No. C-07-1429 JSW, 2009 WL 506864 (N.D. Cal. Feb. 27, 2009).........................................13

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993), *rev'd as to attorneys' fees*, 510 U.S. 517 (1994)...............20, 21

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008)................................................................................................2

*Johnson v. Mazza*,
   No. 2:15-CV-09183-ODW(AS), 2016 WL 5842186 (C.D. Cal. Oct. 4, 2016) .........................5

*Lovesy v. Armed Forces Benefit Ass'n*,
   No. C-07-2745 SBA, 2008 WL 4856350 (N.D. Cal. Nov. 7, 2008)…………........................21

*NetFuel, Inc. v. Cisco Sys. Inc.*,
   No. 5:18-CV-02352-EJD, 2018 WL 4510737 (N.D. Cal. Sept. 18, 2018) ...............................11

*Network Caching Tech. LLC v. Novell Inc.*,
   No. C-01-2079-VRW, 2002 WL 32126128 (N.D. Cal. Aug. 13, 2002)...................................13

*Power Quality & Elec. Sys., Inc. v. BP W. Coast Prods. LLC*,
   No. 16-CV-04791 YGR, 2017 WL 6375760 (N.D. Cal. Dec. 12, 2017)...................................7

*Reese v. BP Exploration (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011)...................................................................................................2

*SEMX Corp. v. Fed. Ins. Co.*,
   398 F. Supp. 2d 1103 (S.D. Cal. 2005) ....................................................................................6

*Sourceprose Corp. v. RPX Corp.*,
   No. 16-CV-04089-LB, 2017 WL 1806496 (N.D. Cal. May 5, 2017).........................................4

ii

*St. John's Univ., New York v. Bolton,*
 757 F. Supp. 2d 144 (E.D.N.Y. 2010)................................................................14

*Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc.,*
 No. 14-CV-00362-BLF, 2014 WL 3705350 (N.D. Cal. July 24, 2014)..............19, 20

*Whittlestone, Inc. v. Handi-Craft Co.,*
 618 F.3d 970 (9th Cir. 2010)..........................................................................2

**California Cases**

*City of Long Beach v. Mansell,*
 3 Cal. 3d 462 (1970)......................................................................................5

*Diodes, Inc. v. Franzen,*
 260 Cal. App. 2d 244 (Ct. App. 1968)........................................................15, 16

*Edwards v. Arthur Andersen LLP,*
 44 Cal. 4th 937 (2008)..................................................................................14

*Flores v. Evergreen at San Diego, LLC,*
 148 Cal. App. 4th 581 (2007)..........................................................................8

*Golden W. Baseball Co. v. City of Anaheim,*
 25 Cal.App.4th 11 (1994)...............................................................................7

*Goldman v. Sunbridge Healthcare, LLC,*
 220 Cal. App. 4th 1160 (2013)...........................................................7, 8, 9, 10

*Imperial Valley Box Co. v. Reese,*
 105 Cal. App. 2d 401 (1951)............................................................................8

*Money Store Inv. Corp. v. S. California Bank,*
 98 Cal.App. 4th 722 (2002)............................................................................5

**Other Authorities**

Fed. R. Civ. P. 12 ..........................................................................1, 2, 3, 19

## I.    <u>INTRODUCTION</u>

Defendant Innowi, Inc. ("Innowi") hereby moves the Court to dismiss plaintiff's First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6) and to strike inflammatory paragraphs of the FAC alleging fraud pursuant to Fed. R. Civ. P. 12(f).  The FAC suffers from the very same deficiencies as the original Complaint and should be dismissed on largely the same grounds.  Plaintiff has failed to allege sufficient facts or plausible legal theories to support its allegations that Innowi breached the non-disclosure agreement ("NDA"), breached the so-called Development Agreement ("Term Sheet"), or misappropriated plaintiff's alleged trade secrets.  All counts should be dismissed with prejudice.

The key facts alleged in the FAC, taken as true for the purposes of this motion, are the same as alleged in the original Complaint: (1) Poynt signed a NDA with Whizz *but not Innowi* (FAC ¶ 11); (2) Poynt signed the Term Sheet with Whizz/Innowi (*id.* ¶ 26); (3) Innowi filed a patent application in September 2015 (and three more in 2017) (*id.* ¶¶ 57, 88, 97, 100); and (4) Innowi later developed its own point-of-sales product.  These factual allegations fail to support any viable claims and all counts should therefore be dismissed.

Plaintiff's FAC also includes numerous inflammatory accusations that Innowi fraudulently held itself out to be a single entity with Whizz.  These scandalous allegations are immaterial to any claim raised by Whizz.  *Id.*  ¶¶ 13, 16-19, 23, 25-27, 110-113, and 142.  Poynt also accuses Innowi of willful and malicious misappropriation despite the fact that under California law, a corporate entity is incapable of engaging in willful and malicious conduct for purposes of punitive damages liability.  FAC ¶ 161.  Innowi thus moves to strike pursuant to Fed. R. Civ. P. 12(f) allegations that Innowi defrauded Poynt by fraudulently claiming to be a single entity with Whizz and that Innowi willfully and maliciously misappropriated Poynt's trade secrets.

## II.    <u>LEGAL STANDARD</u>

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts

1  as true all well-pled factual allegations and construes them in the light most favorable to the

2  plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the

3  Court need not "accept as true allegations that contradict matters properly subject to judicial

4  notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or

5  unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

6  (citation omitted).  While a complaint need not contain detailed factual allegations, it "must

7  contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

8  face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

9  544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable

10  inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Bell*, 550 U.S. at

11  556).

12       Fed. R. Civ. P. 12(f) permits a court to "strike from a pleading an insufficient defense or

13  any redundant, immaterial, impertinent, or scandalous matter."  The function of a motion made

14  under this rule is "to avoid the expenditure of time and money that must arise from litigating

15  spurious issues by dispensing with those issues prior to trial."  *Whittlestone, Inc. v. Handi-Craft*

16  *Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotation marks and citation omitted).

17  **III.   <u>ARGUMENT</u>**

18       Poynt's FAC raises four causes of action: (1) breach of contract for an alleged violation of

19  the NDA, (2) breach of contract related to the Term Sheet, (3) federal trade secret

20  misappropriation under the Defend Trade Secrets Act ("DTSA"), and (4) state trade secret

21  misappropriation under the California Uniform Trade Secrets ACT ("CUTSA").  Poynt's FAC

22  fails to state a claim as to each claim as discussed below and each claim should be dismissed.

23       The first count, alleging breach of the NDA, should be dismissed because Innowi is not a

24  party to the NDA and has no obligations under the NDA.  The NDA, with an integration clause

25  stating it is the complete agreement, does not even purport to bind Innowi – it binds only Whizz

26  and Poynt, the signatories of the contract.  Poynt, realizing this fatal fact, presents a shotgun

27  pleading of four separate legal theories to try to get around this significant problem.  Poynt's

28

MOTION TO DISMISS AND MOTION TO STRIKE          CASE NO. 5:18-CV-05814

1   allegations appear to be based upon Poynt's own misunderstanding and extensive post-signing

2   allegations.  This does not cure the express contractual language in the NDA.

3          The second count, alleging breach of the Term Sheet, should be dismissed because Poynt

4   has not plausibly alleged any breach by Innowi for two reasons: (1) Innowi's patent applications

5   do not claim ownership of Poynt intellectual property, and (2) Innowi did not claim any Poynt

6   trade secrets as its own.

7          The third and fourth counts, alleging misappropriation of trade secrets, should be

8   dismissed because the Poynt "information" does not constitute trade secrets and because the FAC

9   fails to identify how Innowi allegedly misused any Poynt information.  While the Court previously

10  deferred dismissal of this count until Poynt was given the opportunity to define its trade secrets

11  with the requisite particularity under CCP 2019.210, Poynt's deficient disclosures under 2019.210,

12  coupled with its deficient allegations in the FAC, confirm its inability to plausibly allege any trade

13  secrets were misappropriated.

14         Finally, Poynt's allegations of fraud against Innowi should be stricken as immaterial to

15  Poynt's claims.  Poynt does not raise any claims of fraud but includes numerous inflammatory

16  accusations that Innowi defrauded Poynt by claiming to be a single entity with Whizz.  Because

17  these allegations are immaterial to Poynt's claims, are scandalous and inflammatory, and are

18  contradicted by Poynt's own admissions in the pleadings, they should be stricken from the FAC.

19  Fed. R. Civ. P. 12(f).

20         **A.      The Claim for Breach of the Non-Disclosure Agreement Should Be Dismissed**

21         Plaintiff's count for breach of the NDA should be dismissed because the FAC fails to

22  allege facts showing that Innowi was a party to the NDA or had any obligations under the NDA.

23  The elements of a breach of contract claim under California law[1] are: "(1) the existence of the

24  contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)

25  the resulting damages to the plaintiff."  *Sourceprose Corp. v. RPX Corp.*, No. 16-CV-04089-LB,

26

27  [1] Paragraph 8 of the NDA, attached to the FAC as Exhibit A, states that "This Agreement will be
    construed, interpreted, and applied in accordance with the internal laws of the State of California
28  (excluding its body of law controlling conflicts of law)."

MOTION TO DISMISS AND MOTION TO STRIKE            CASE NO. 5:18-CV-05814

2017 WL 1806496, at *6 (N.D. Cal. May 5, 2017).  Here, the FAC fails to allege facts sufficient to show the existence of a contract between Poynt and Innowi.

The facts alleged in the FAC, coupled with a review of the NDA itself, shows that (1) Innowi did not sign the fully integrated NDA and is therefore not a party bound by obligations under the NDA; (2) Innowi's alleged actions after-the-fact did not bind Innowi; and (3) Muhammed Irfan signed the NDA only on the behalf of Whizz and made no mention of Innowi.[2] Based on these facts, the Court should dismiss this count because there was no valid NDA alleged between Poynt and Innowi.

### 1. FAC Does Not Allege Innowi Was A Party To The Fully Integrated NDA

The FAC does not allege that Innowi signed the NDA.  Nor could it.  The FAC does not allege that the terms of the NDA even mention, or purport to bind, Innowi.  Again, such a contention would be refuted by the document itself.  FAC, Ex. A.  Instead, the FAC merely alleges that Poynt entered into the NDA with a non-party to this suit, Whizz, whose President signed the NDA *on Whizz's behalf*.  FAC ¶ 11 ("*Whizz and Poynt* entered into a Mutual Non-Disclosure Agreement ("NDA") dated March 20,2014.") (emphasis added); *id.* ¶ 104 ("The NDA was signed by Ifran [sic] of Whizz.").  And there is no need to look beyond the face of the document itself; the NDA explicitly states that "[t]his Mutual Non-Disclosure Agreement [is] between Poynt Co. [and] Whizz Systems, Inc," and includes an integration statement that the NDA "is the complete and exclusive statement regarding the subject matter of this Agreement."  FAC, Ex. A at 1-2.

To cure the obvious flaw in its claim, Poynt adopts a shotgun pleading, alleging four separate theories to try to bind Innowi to a contract it did not sign.  The four faulty theories are: (1) Innowi is equitably estopped from claiming it is not bound by the NDA; (2) Whizz bound Innowi to the NDA via agency; (3) Whizz bound Innowi to the NDA based on ostensible agency; or (4) Innowi is bound by the NDA through ratification.

---

[2] Poynt repeatedly makes ad hoc accusations of fraud and misrepresentations related to Whizz and Poynt.  These accusations have no bearing on a simple breach of contract claim.

1    Poynt fails to support its contention that these theories can even be used to bind a

2    defendant to a contract between third-parties that does not mention or purport to impose

3    obligations on Innowi.

4            **2.      FAC Fails To Plead Equitable Estoppel**

5            The FAC's first faulty theory is equitable estoppel.  Equitable estoppel is only available in

6    a defensive posture.  *Johnson v. Mazza*, No. 2:15-CV-09183-ODW(AS), 2016 WL 5842186, at *4

7    (C.D. Cal. Oct. 4, 2016) ("Equitable Estoppel is not an affirmative claim, but rather an affirmative

8    defense"); *see e.g.*, *Money Store Inv. Corp. v. S. California Bank*, 98 Cal.App. 4th 722, 732 (2002)

9    ("[E]quitable estoppel 'acts defensively only.'").  A plaintiff therefore cannot affirmatively raise

10   equitable estoppel to support a claim for breach of contract.  *Id.*

11           Poynt cites *City of Long Beach v. Mansell*, 3 Cal. 3d 462, 487–88 (1970) to show a

12   circumstance where the court allowed an allegation of equitable estoppel to survive the motion to

13   dismiss stage.  However, the equitable estoppel claim was raised as a defense below, not in an

14   offensive posture.  *Id.*  The doctrine of equitable estoppel has no application here because Poynt is

15   raising an equitable estoppel theory offensively to support a breach of contract claim.

16           Poynt also fails to show that equitable estoppel would apply to bind a defendant to a

17   contract between two third-parties that, on its face, does not even purport to bind the defendant.

18   This is especially true when Poynt and Whizz agreed to any changes to the agreement would be in

19   writing, not through some "equitable" theory.  And Poynt never alleges that Innowi ever held itself

20   out to be bound by the contract in any event.  Instead, Poynt merely recites its own erroneous

21   belief that Innowi was a single entity with Whizz.

22           To plead equitable estoppel, Poynt must plead that: (1) the party to be estopped must be

23   apprised of the pertinent facts; (2) he must intend that his conduct shall be acted upon, or must so

24   act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party

25   must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

26   *City of Long Beach*, 3 Cal. 3d at 489.  Poynt has failed to plead that Innowi is equitably estopped

27   from asserting it is not bound to the NDA because: (1) Innowi was not apprised of the pertinent

28

5

facts; (2) Poynt was not ignorant of the true state of the facts and not reasonable on relying on its erroneous belief.

First, Poynt fails to properly plead that Innowi was "apprised of the facts."  Because Poynt is attempting to estop Innowi from "asserting that it is not a party to the NDA" (FAC ¶ 110), Poynt must plead sufficient facts that plausibly claim Innowi knew about the existence of the NDA and the fact that Poynt believed the NDA bound Innowi.  *See, e.g.*, *SEMX Corp. v. Fed. Ins. Co.*, 398 F. Supp. 2d 1103, 1114 (S.D. Cal. 2005) (party must be aware of the *pertinent* facts under the first element of equitable estoppel).  But Poynt fails to make this showing, instead pleading that "Innowi knew that it was a separate legal entity from Whizz."  FAC ¶ 112.  Innowi's knowledge that it was a separate legal entity from Whizz is not the knowledge required to demonstrate that Innowi knew of the NDA or that it should be bound by the NDA.  And Innowi's participation in negotiations that occurred well after the NDA was signed does not add anything to show knowledge of the NDA.

Second, Poynt also cannot plausibly claim it was "ignorant to the true state of the facts" or "reasonably" relied on Innowi's alleged conduct.  Poynt alleges that "throughout the relationship[,] Poynt had no reason to know or believe that an NDA was needed with any party other than Whizz" is implausible.  FAC ¶ 15.  However, Poynt admits in the FAC that after Poynt and Whizz signed the NDA, but *before* Innowi signed any contracts or agreed to work with Poynt, Innowi held itself out as a separate entity, as noted above.  *Id.* ¶¶ 17, 23, 26, 30.  For example, the FAC acknowledges that Innowi regularly and continuously provided Poynt with documents and presentations bearing the "Innowi, Inc." brand (*see id.* ¶¶ 23, 26, 30) and Innowi had its own website (Innowi.com) that "publicly emphasized its . . . experience." *Id.* ¶ 17.  Poynt's also admits in the FAC that during the Development Project termination negotiations, Innowi *offered* to assume full responsibility for Whizz's compliance with the NDA as part of a proposed agreement. *Id.*; *see also* FAC, Ex. D.  But Poynt rejected this offer and no agreement was reached.  FAC ¶ 38. As soon as Poynt became aware that Innowi might not be the same entity as Whizz (e.g., through the multitude of documents referencing Innowi, Inc.), Poynt reasonably should have ceased its reliance on any actions by Innowi that allegedly led Poynt to erroneously believe that Innowi and

Whizz were a single party.  *See, e.g.*, *Power Quality & Elec. Sys., Inc. v. BP W. Coast Prods. LLC*, No. 16-CV-04791 YGR, 2017 WL 6375760, at *7 (N.D. Cal. Dec. 12, 2017) (holding it was unreasonable for a sophisticated business entity to rely on actions contradictory to written documents); *Golden W. Baseball Co. v. City of Anaheim*, 25 Cal.App.4th 11, 48 (1994).

### 3.   Poynt Has Not Alleged Agency, Ostensible Agency, Or Ratification

The FAC alleges three additional legal theories to try to rewrite the NDA: (1) that Irfan of Whizz was Innowi's express, implied, or apparent agent; (2) that Irfan of Whizz was Innowi's ostensible agent; or (3) that Innowi ratified the NDA.  But these allegations rely on a fundamentally flawed application of agency law.  Agency or ratification, as evidenced by the very cases cited by Poynt, apply when a third-party (such as an agent) signs a contract *that purports to bind a principal*.  Agency is not an applicable theory when a third-party signs a contract that only purports to bind that same party.  The NDA, which is a fully integrated contract that states that "[t]his Agreement is the complete and exclusive statement regarding the subject matter of this Agreement," does not purport to bind Innowi – Whizz cannot have signed *on Innowi's behalf* when the contract does not mention or apply to Innowi.

#### a.   Neither Irfan/Whizz Was Innowi's Agent And Could Not Sign The NDA On Innowi's Behalf

Poynt asserts that Innowi authorized Irfan, as its express or implied agent, to sign the NDA on Innowi's behalf.  FCA ¶ 117.  This makes little sense where the contract does not refer to Innowi or purport to apply to Innowi.  Regardless, Poynt has not plausibly alleged that Innowi authorized Irfan/Whizz to act as its agent and bind it to a contract.

"Whether a person performing work for another is an agent . . . depends primarily upon whether the one for whom the work is done has the legal right to control the activities of the alleged agent."  FAC ¶ 118 (citing *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1579, (1994), *as modified* (Nov. 14, 1994), *as modified on denial of reh'g* (Nov. 17, 1994), *as modified* (Nov. 22, 1994)).  A principal will be liable for the contracts entered into by its agent only if the principal authorized the agent to enter into the contract.  *See Goldman v. Sunbridge Healthcare, LLC*, 220 Cal. App. 4th 1160, 1173 (2013).  A principal may use words that expressly grant authority to the

1   agent, or agency may be implied from the circumstances and conduct of the parties.  *Id.*  An

2   undisclosed principal is liable for contracts signed by their agents on their behalf.  *Imperial Valley*

3   *Box Co. v. Reese*, 105 Cal. App. 2d 401, 403 (1951).

4          In support of its deficient arguments, Poynt alleges that, at the time of signing, (1) Irfan

5   knew Innowi's team would be principally responsible for working on the Poynt project; (2)

6   Innowi also knew they would be working on the Poynt project; (3) Irfan mentioned the "Whizz

7   design team" was covered; and (4) Innowi had ultimate control over whether to enter into the

8   business relationship because the project was staffed by Innowi engineers.  FAC ¶ 20.

9          These agency arguments are fundamentally flawed for at least three reasons.  First, an

10  agent can only bind its principal to a contract by acting on the behalf of the *principal*.  Here Irfan

11  signed the agreement on the behalf of *Whizz*, not *Innowi*.  Poynt fails to allege even a scintilla of

12  evidence that shows Irfan or Whizz reasonably believed that it was given express or implied

13  authority by Innowi to act on Innowi's behalf or was actually signing a contract on Innowi's

14  behalf that would bind Innowi.

15         Second, Poynt provides no allegations that Innowi acted in a way that gave rise to an

16  inference of authority.  Nowhere is Innowi mentioned in the agreement, at no time did Innowi

17  participate in the NDA negotiations, and Innowi is not a signatory to the NDA.  And it cannot be

18  that Innowi's *later* conduct, for example agreeing to work on a project with Whizz, gave Whizz an

19  actual or reasonable belief that it had authority to bind Innowi to contracts at the time the NDA

20  was signed.

21         Third and finally, any implicit or explicit authority of agency from Innowi must pre-date

22  the integration of the agreement to have given Whizz/Irfan agency powers at the time the NDA

23  was signed.  *See Flores v. Evergreen at San Diego, LLC*, 148 Cal. App. 4th 581, 587 (2007).  Any

24  allegations of conduct that indicates an agency was formed post-integration are irrelevant for

25  proving agency existed at the time of signing without evidence of ratification.  *Id.* at 588-89.  All

26  the conduct cited by Poynt, which occurred after the signing of the NDA, is irrelevant to the

27  question of whether Whizz had powers of agency to bind Innowi when it signed the NDA.

28

MOTION TO DISMISS AND MOTION TO STRIKE          CASE NO. 5:18-CV-05814

1

**b.**     **Irfan Did Not Act As Innowi's Ostensible Agent**

2       Poynt has not alleged facts to show that Whizz was Innowi's "ostensible agent" and cannot

3   rely on Innowi's alleged silence to create an ostensible agency argument.

4       "Agency . . . can be founded on ostensible authority, that is, some intentional conduct or

5   neglect on the part of the alleged principal creating a belief in the minds of third persons that an

6   agency exists, and a reasonable reliance thereon by such third persons.'" *Goldman*, 220 Cal. App.

7   4th at 1173 (citations omitted).  However, "agency cannot be created by the conduct of the agent

8   alone; rather *conduct by the principal* is essential to create the agency." *Id.* (emphasis in original).

9   "The principal must in some manner indicate that the agent is to act for him [or her], and the agent

10  must act or agree to act on his [or her] behalf and subject to his [or her] control . . . .  Thus, the

11  formation of an agency relationship is a bilateral matter." *Id.* (internal quotations omitted)

12  Silence on the matter of agency is insufficient to be considered an adoptive admission. *Id.*

13      Poynt's allegations do not plead "ostensible agency."  Poynt states that "Poynt dealt with

14  Ifran [sic] in executing the NDA with reasonable belief that Ifran [sic] had the authority to bind

15  [Innowi]."  FAC ¶ 129.  Poynt alleges that Innowi caused Poynt to believe that Whizz was

16  Innowi's ostensible agent by (1) "allowing" Whizz to sign the NDA, (2) "allowing" Whizz to

17  hold-out Innowi as part of the team, (3) negotiating the Term Sheet as one with Whizz, and (4)

18  working in Whizz's office and using Whizz e-mail addresses. *Id.* ¶ 129-131.

19      These allegations do not support a plausible claim that Whizz/Irfan was an "ostensible

20  agent" of Innowi.  As stated above, extensive allegations in the pleadings show that Poynt knew

21  Innowi was a separate entity from Whizz, and that Poynt rejected an effort to bind Innowi to the

22  NDA.  Further, Poynt fails to demonstrate any conduct by Innowi that indicates Innowi intended

23  Whizz and Irfan to act on Innowi's behalf.  Whizz's conduct in signing and holding out the agency

24  relationship demonstrates only half of the formation requirements.  Poynt provides nothing to

25  show that Innowi, by its conduct, affirmatively "allowed" Whizz to sign the NDA or hold-out

26  Innowi as Whizz's principal.  Nor does Poynt show how Innowi's participating alongside Whizz,

27  working out of Whizz's office, and using Whizz e-mail addresses indicate an agency-like

28

MOTION TO DISMISS AND MOTION TO STRIKE          CASE NO. 5:18-CV-05814

1    relationship.  Mere use of another's office space and e-mail addresses is insufficient to constitute a

2    delegation of authority.

3            At best, the FAC alleges that Innowi was silent when Whizz referred to Innowi as part of

4    the team.  *Id.* ¶ 130.  However, Innowi's silence, as a matter of law, cannot create a relationship of

5    ostensible agency.  *Goldman*, 220 Cal. App. 4th at 1173.

                        **c.    Innowi Could Not Ratify Whizz and Poynt's NDA Because It
                                Was Never A Party To The NDA**

6

7            Poynt's allegations do not allege sufficient facts to show ratification of the NDA by

8    Innowi.  Ratification requires "(1) an agent must purport to act on a principal's behalf, (2) the

9    principal must adopt or approve of the agent's act, either expressly or through conduct from which

10   adoption may be inferred (such as retaining the benefits of the act), and (3) the principal must

11   know all material facts at the time of the adoption or approval of the agents act."  FAC ¶ 122

12   (citing *Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 73 (1972)).

13           Ratification fails as a theory because there was no agency relationship when Whizz signed

14   the NDA and Whizz did not purport to bind Innowi to the NDA and no writing was made to

15   amend the NDA to include Innowi.  *See* FAC, Ex. A; *see also* Section III.A.3.a-b, *supra*.  Poynt

16   also does not sufficiently allege that Innowi ratified the agreement through its passive conduct.

17   Poynt also fails to show that Innowi had knowledge of all the material facts, such as familiarity

18   with the NDA and its binding power, at the time of adoption or approval, as explained above.

19           **B.      The Claim for Breach of the Term Sheet Should Be Dismissed**

20           The claim for breach of the Term Sheet should be dismissed because Poynt has not

21   plausibly alleged a breach by Innowi for two reasons: (1) Innowi's patent applications do not

22   claim ownership of Poynt's intellectual property, and (2) Poynt has not alleged any trade secrets

23   that Innowi improperly claimed to own.

24           First, Poynt's allegations that Innowi's filing of patent applications was a breach of the

25   Term Sheet fails to plausibly allege that Innowi claimed ownership of Poynt intellectual property.

26   Poynt's allegations focus on public information found in Innowi's patent application and fail to

27   plausibly allege that the inventive elements in the patents' claims, as evidenced by the file

28

                                                        10
    MOTION TO DISMISS AND MOTION TO STRIKE                           CASE NO. 5:18-CV-05814

histories, are Poynt's property under the Term Sheet.  Sensing this deficiency, Poynt claims that *any invention by Innowi*, even *after* the Poynt/Innowi relationship ended, necessarily was "derived" from the Term Sheet because it relates to the same subject matter.  This is contrary to the Term Sheet and fails as a matter of law.

Second, Poynt alleges that Innowi breached the Term Sheet by improperly using unspecified Poynt trade secrets.  The FAC contains no allegations that Innowi has claimed *ownership* of Poynt trade secrets.  The Term Sheet says nothing about *use* of trade secrets.  And because Poynt's allegations of trade secret misappropriation are deficient, as explained in Section C, *infra*, they cannot be the basis for asserting a breach of the Term Sheet.

### 1.    Innowi's Patent Applications Do Not Claim Poynt's Intellectual Property

Poynt alleges that Innowi breached the Term Sheet by filing patent applications that improperly claim technology owned by Poynt.  These patents' claims have at least two features that were never discussed, created or used during the relationship between the two companies and served as the point of novelty for the claimed inventions: a facial recognition customer loyalty feature and an advanced security mesh.  Poynt makes extensive allegations about publicly known features, such as a terminal having a screen and a camera, but nowhere does it include any specific allegations related to the features critical to patentability.

The prosecution history of the Innowi patents shows that the claim elements that Poynt alleges were derived from the Development Project, such as a screen and a camera, were well known and were not the "inventive" elements that Innowi independently developed after the Poynt/Innowi relationship concluded.

### a.    Innowi's '538 Patent's Inventive Element Not Derived From Development Project

Poynt's allegation that U.S. Patent No. 10,127,538 (the "'538 Patent") claims Poynt intellectual property ignores the file history of the '538 Patent that evidences the inventive element of the patent was a facial recognition customer loyalty feature.  Courts may properly take judicial notice of patent file histories when ruling on a motion to dismiss.  *NetFuel, Inc. v. Cisco Sys. Inc.*,

MOTION TO DISMISS AND MOTION TO STRIKE                     CASE NO. 5:18-CV-05814

1    No. 5:18-CV-02352-EJD, 2018 WL 4510737, at *2 n.1 (N.D. Cal. Sept. 18, 2018) ("Under Rule

2    201 of the Federal Rules of Civil Procedure, this court may take judicial notice of the [relevant]

3    Patent's file history . . .").

4            The Patent Office initially rejected all of Innowi's proposed claims as obvious over a

5    combination of prior art.  Declaration of Lucas Dahlin In Support of Innowi's Motion to Dismiss

6    ("Dahlin Decl."), Ex. 1 at 3-10.  Indeed, nearly all of the elements that Poynt claims it owns (FAC

7    at ¶¶ 59-87) were found by the examiner in public prior art and do not belong to Poynt.  For

8    example, Claim 1 of the '538 Patent includes a processor, a memory, a screen, a printer, etc. – all

9    common features of point-of-sales systems at the time.

10           Innowi was able to overcome the examiner's rejection by amending its claims and adding

11   in a new inventive element to all of the independent claims: "wherein a camera is located on the

12   side of the housing containing the at least one customer display screen to securely identifying a

13   customer by face recognition, and wherein the face recognition of the customer applies the

14   customer's loyalty program accounts, accumulated reward points, and coupons."  Dahlin Decl.,

15   Ex. 2 at 9-11.  Innowi specifically argued that the prior art did not include the ability to securely

16   identify a customer by face recognition, "wherein the face recognition of the customer applies the

17   customer's loyalty program accounts, accumulated reward points, **and** coupons."  *Id.* at 10

18   (emphasis in original).  Based on these claim amendments, the Patent Office thereafter issued a

19   Notice of Allowance.  Dahlin Decl., Ex. 3.

20           Poynt's assertions with respect to these points of novelty is insufficient.  Indeed, Poynt

21   does not allege that its devices had this feature at all, or even that the idea was discovered,

22   engineered, or disclosed during the Poynt/Innowi relationship.  Instead, Poynt merely alleges that

23   its platform is "open source and supports third party applications[]" so that "software-based facial

24   recognition functionality ***could*** be achieved on Poynt's device with the use of the cameras."  FAC

25   ¶ 70 (emphasis added).  The fact that *a third-party **could***[3] create this functionality is irrelevant to

26   Poynt's claim that such an element arose from the Term Sheet and *is owned by Poynt*.

27   _____

28   [3] Poynt alleges that a third-party, Vend, may have been able to provide this functionality around
     the same time frame, but does not argue that such a feature arose from the Term Sheet.  FAC ¶ 70.

MOTION TO DISMISS AND MOTION TO STRIKE                    CASE NO. 5:18-CV-05814

b.     **Innowi's '609 Patent's Later Invented Elements Cannot Be Owned By Poynt**

Poynt's allegations with respect to the U.S. Patent No. 10,140,609 are also deficient.  The FAC fails to allege that the inventive security mesh claimed in the '609 Patent arose from the Term Sheet or is owned by Poynt.

The '609 Patent is a continuation-in-part of the '538 patent.  It lists additional inventors and adds subject matter.  It contains many of the same generic elements as the '538 Patent, such as a display and card reader, but also includes an innovative and advanced security mesh that was invented by Innowi in 2017 (as evidenced by the filing date and the new inventors/matters added to the patent), years after Development Project ended and Poynt terminated the Term Sheet.  The lone independent claim of the '609 Patent claims a very particular security mesh:

> a security mesh securing the secure payment processor and the EMV card reader such that the security mesh must be removed to access the EMV card reader or the secure payment processor, wherein the security mesh causes the memory to delete the payment data when a current passing through the security mesh is interrupted, and wherein any data related to the EMV card reader system, the NFC reader system, and the MSR system is deleted from the memory and the security payment processor when the current passing through the security mesh is interrupted.

'609 Patent, Claim 1.

Poynt's allegations on this element are conclusory and devoid of any analysis, directly quoting the element from the '609 Patent and then asserting, through a conclusory allegation, that Poynt's product includes the same feature.  FAC ¶ 92.  Poynt makes no allegation that the claimed advanced security mesh was developed, discovered, or used by Innowi while it was working Poynt on the Development Project.  Such unsubstantiated allegations that merely mimic claim language are insufficient to state a plausible entitlement to relief.  *See, e.g.*, *Eshelman v. Orthoclear Holdings, Inc.*, No. C 07-1429 JSW, 2009 WL 506864, at *3 (N.D. Cal. Feb. 27, 2009) ("The court, however, is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged . . . Conclusory allegations without more are insufficient to defeat a motion to dismiss.) (citations omitted); *see also Network Caching Tech. LLC v. Novell Inc.*, No. C-01-2079-VRW, 2002 WL 32126128, at *6 (N.D. Cal.

1    Aug. 13, 2002) (in the context of infringement contentions, rejecting allegations as conclusory and

2    insufficient where plaintiff merely "mimics the language of the claim" and fails to map cited

3    literature to the language).

4          Poynt's analysis of Innowi's pending patent applications, which have not yet been issued

5    and whose claims may be amended during prosecution, are even more deficient, failing to analyze

6    any inventive elements of those applications' claims.  And Poynt ignores that these later patent

7    applications were filed in 2017, years after the Development Project ended in 2014.

8          To cure its obvious pleading deficiency, Poynt goes so far as to assert that *any later*

9    *invention* by Innowi based on the same subject matter (point-of-sales device) should be owned by

10   Poynt because it was "necessarily" derived from the work Innowi performed for Poynt.  FAC ¶ 53

11   ("because Innowi's patents are derived from the work that Innowi did for Poynt, Poynt is the

12   rightful owner of those patents *regardless of any new features that Innowi may have added*")

13   (emphasis added).  This is contrary to the plain reading of the Term Sheet which states Poynt to

14   own all IP "associated with or derived *as a result of the Project*."  FAC ¶ 24 (emphasis added); *see*

15   *also* FAC, Ex. B.  New features that Innowi invented years later are not "as a result of the

16   Project."

17         Poynt's reading is also contrary to public policy on patent assignments, contrary to

18   California's policies against non-compete agreements, and an absurd interpretation of the

19   agreement.  *See, e.g.*, *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 161 (E.D.N.Y.

20   2010) ("a patent assignment agreement is an unenforceable 'mortgage on a man's brain' when it is

21   '[a] naked assignment or agreement to assign, in gross, a man's future labors as an author or

22   inventor,' including those as yet unknown") (internal citations omitted); *see also Edwards v.*

23   *Arthur Andersen LLP*, 44 Cal. 4th 937, 945 (2008) (citing Cal. Bus. & Prof. Code § 16600 for rule

24   that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or

25   business of any kind is to that extent void[]"; *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut.*

26   *Ins. Co.*, 5 Cal. 4th 854, 867 (1993) (courts should interpret contract provisions based on their

27   "clear and explicit meaning" in view of the "mutual intention of the parties" and cannot "adopt a

28   strained or absurd interpretation in order to create an ambiguity where none exists")).

### 2.    Allegations That Innowi Breached the Term Sheet By Misappropriating Trade Secrets Are Deficient

Poynt also alleges that Innowi breached the Term Sheet where it made use of certain unspecified Poynt trade secrets.  But the Term Sheet does not include any provisions regarding *use* of trade secrets.  The Term Sheet, at most, includes an *ownership* provision, stating that "Poynt to own all IP associated with and derived as a result of this project."  FAC, Ex. B.  To claim a breach of the Term Sheet, therefore, Poynt must allege that Innowi is claiming *ownership* of "IP associated with and derived as a result of this project."  In addition, to the extent any claim of unauthorized use of trade secrets is alleged, it fails for the same reasons that Poynt's trade secret claims fail.

Poynt also has not alleged that Innowi is claiming *ownership* of Poynt's alleged trade secrets – its lone allegation on this count is that "Innowi breached the Development Agreement *by making use of trade secrets* that that were associated with and derived as a result of the Development Agreement and therefore contractually belong to Poynt."  FAC ¶ 151.  Simply making use of Poynt's trade secrets might be a claim for misappropriation, which Poynt has already alleged.  But because Poynt has not alleged that Innowi is claiming *ownership* of its alleged trade secrets in contravention of the ownership provision of the Term Sheet, Poynt has not sufficiently plead a claim for breach of the Agreement.

### C.    Count for Misappropriation of Trade Secrets Should Be Dismissed

The two counts for trade secret misappropriation should be dismissed because Poynt has still not alleged sufficient facts to assert trade secret misappropriation by Innowi.  In both its pleadings and discovery responses, Poynt has not sufficiently defined its trade secrets with enough "sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies."  *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968); *see also Albin v. Trustmark Ins. Co.*, No. CV 13-5788 PSG (AGR), 2013 WL 12191722, at *9 (C.D. Cal. Nov. 25, 2013) (dismissing claim for trade secret misappropriation due to lack of specificity in complaint).  Until Poynt can adequately allege *what* its trade secrets are

MOTION TO DISMISS AND MOTION TO STRIKE                    CASE NO. 5:18-CV-05814

and *why* it has a plausible belief that Innowi misappropriated any of them, Poynt's allegations of trade secret misappropriation are woefully deficient and must be dismissed.

### 1. FAC And 2019.210 Disclosures Do Not Sufficiently Identify Valid Trade Secrets

The FAC suffers from the same defects as the original Complaint and Poynt's 2019.210 trade secret disclosures: Poynt is unable to describe with reasonable particularity any trade secrets that Innowi supposedly misappropriated. Instead, Poynt is determined to engage in a fishing expedition, claiming a laundry list of vague trade secrets to root through Innowi's highly confidential information. The Court previously found Poynt's allegations lacking but deferred dismissal of this claim until Poynt provided its 2019.210 disclosures. Dkt. 49 ("Plaintiff's trade secret claims may be deficient as pled, but as Defendant indicated at the Hearing, the discovery process will provide sufficient notice as to these allegations."). Now, after providing those disclosures and re-pleading its allegations of misappropriation, it is abundantly clear that Poynt is unable to describe a single valid trade secret that was allegedly misappropriated. Regardless of the sufficiency of Poynt's 2019.210 disclosures, which appear ripe for a discovery dispute, Poynt has simply failed to meet the pleading requirements to plausibly state a claim for trade secret misappropriation.

In the FAC, Poynt has not "allege[d] the trade secret with some particularity in order to give Defendant 'reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery." *Albin*, 2013 WL 12191722, at *9; *see also Diodes*, 260 Cal. App. 2d at 253.

Poynt's FAC, just like the original Complaint (Dkt. 1), still fails to describe any trade secrets with sufficient particularity. Poynt has not "allege[d] the trade secret with some particularity in order to give Defendant 'reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery.'" *Albin*, 2013 WL 12191722, at *9; *see also Diodes*, 260 Cal. App. 2d at 253. While a plaintiff is not "required to disclose his trade secret in a public filing," it must "describe the subject matter of the trade secret with sufficient particularity [in the complaint] to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the

1  trade." *Albin*, 2013 WL 12191722, at *8-*9.  Poynt's failure to be able to state any sufficient

2  trade secrets in its FAC is compounded by its inability to describe sufficient trade secrets through

3  its highly confidential 2019.210 disclosures.

4       Courts have dismissed claims of trade secret misappropriation where the complaint

5  "merely alleges that 'at all times relevant the confidential information constituted [Plaintiff's]

6  trade secrets' and that Defendant 'obtain[ed] and misappropriate[d] the confidential information.'"

7  *Id.* (quotation omitted).

8       Here, the FAC, using the exact language from the original Complaint, merely lists a

9  number of general documents that Poynt considers to be trade secrets (e.g., schematics, source

10  code, lists of suppliers and vendors, etc.).  *Compare* FAC ¶¶ 32, 153, 164 *with* Dkt. 1 ¶¶ 19, 60,

11  71.  It then makes general allegations that "Innowi misappropriated Poynt's trade secrets by

12  improperly using Poynt's trade secrets to develop and market a competing product and by

13  disclosing Poynt's trade secrets to other without authorization."  *Id.* at ¶¶ 159, 170.

14       Because Innowi cannot tell from the FAC what it has been accused of misappropriating

15  (and whether it even had access to such information), Innowi does not have "reasonable notice of

16  the issues which must be met at the time of trial and to provide reasonable guidance in

17  ascertaining the scope of appropriate discovery."  *Albin*, 2013 WL 12191722, at *9 (holding that

18  "[b]ecause Plaintiff fails to provide Defendant with 'reasonable notice' of his trade secret claim,

19  the Court GRANTS Defendant's Motion [to dismiss] as to this claim.").  This count, therefore,

20  should be dismissed for failure to state a claim.

21       Poynt's FAC disclosures are a vague, non-specific lists of the universe of Poynt's potential

22  trade secrets.  FAC ¶¶ 32, 153, 164.  Poynt's vague disclosures in discovery cannot cure these

23  pleading deficiencies.  In its initial discovery responses, Poynt refused to provide Innowi with

24  detailed information regarding its trade secrets because ███████████████████████

25  ████████████████████████████████████████████████

26  ████████████████████████████████████████████████

27  ████████████████████████████████████████████████

28  ████████████████████████████████████████████████

MOTION TO DISMISS AND MOTION TO STRIKE       CASE NO. 5:18-CV-05814

███████████████████████████████████████████ Dahlin Decl., Ex. 4 at 3, 6, 7.

Poynt has still not provided Innowi with updated responses to these interrogatories despite its

promise to do so.

### 2. FAC Does Not Plausibly Allege Any Trade Secrets Were Misappropriated

The Court should also dismiss the trade secret claims because Poynt has failed to plausibly

allege that Innowi misused any Poynt information.  Specifically, Poynt's inability to plead *how*

Innowi used Poynt's alleged trade secrets is a separate defect from Poynt's inability to sufficiently

disclose *what* the alleged trade secrets are.

The FAC fails to state which, if any, trade secrets Innowi even had access to, let alone

which trade secrets it has allegedly misappropriated.  *Id.*; *see also id.* at ¶¶ 157, 168 ("As a design

manufacturing contractor involved in the development of hardware for the Poynt Smart Terminal

device, Innowi acquired knowledge and custody *of several of Poynt's trade secrets*.") (emphasis

added).  The use of "such a broad-sweeping, nebulous definition [of what was allegedly

misappropriated] not only fails to shed any light on the general nature of these trade secrets, but it

is tautological as well." *Albin*, 2013 WL 12191722, at *9.

The only factual allegation that allegedly describes *how* Innowi supposedly used Poynt's

information (and describes why Poynt has a plausible belief that any information was used by

Innowi) is entirely conclusory and devoid of any details that might put Innowi on notice or give

rise to a plausible claim.  Paragraph 48 of the FAC states that "a comparison of the architecture

and components of Innowi's product reveals that Innowi is using the same architecture and

component selection as Poynt. The number of similarities (including the use of numerous identical

components in the same or similar architecture) cannot reasonably be attributed to a coincidence."[4]

FAC ¶ 48.  Poynt's vague allegations of "architecture" and "components" are plainly insufficient

---

[4] While not entirely relevant at the motion to dismiss stage, Innowi is curious about the sufficiency of Poynt's pre-suit investigation that led to Poynt's allegations that "Innowi is using the same architecture and component selection as Poynt," given that Innowi's devices use entirely different components from the Poynt device designed during the Development Project (i.e., different secure processors, different screens, different application processors, different operating systems, different source code).

---

MOTION TO DISMISS AND MOTION TO STRIKE          CASE NO. 5:18-CV-05814

1    to put Innowi on notice of what is alleged to have actually misappropriated.  If Poynt is generally

2    referring to generic components such as screens or computer processors, then all point-of-sales

3    devices have these same components and there are no valid trade secrets at issue.  Innowi simply

4    has no idea at this point what the alleged trade secrets are that it is accused of misappropriating.

5         Poynt's only specific factual allegation is that "Poynt has learned that one of its consultants

6    (who aided in the tuning of NFC antennae and who Innowi learned about as a result of its work on

7    the [Term Sheet]) was later hired by Innowi to assist Innowi in the development of its own

8    payment terminal product."  *Id.*  The fact that Innowi later allegedly hired an unnamed individual

9    who was previously a consultant on the Development Project is not, in of itself, misappropriation

10   of a trade secret.  To the extent that Poynt is claiming that knowledge of this consultant is a trade

11   secret, it is plainly not under the law.  *See, e.g.*, *Amerisourcebergen Drug Corp. v. Am. Associated*

12   *Druggists, Inc.*, No. 05-5927, 2008 WL 248933, at *24 (E.D. Pa. Jan. 29, 2008) ("The identity of

13   vendors . . . [has] already been in the hands of third parties, i.e. the [vendors] themselves, who had

14   every right to disclose their prices [and identities] to their prospective customers.  To prevent the

15   defendant from using the information, the Court determined, would 'put an undue burden on the

16   innocent vendors, as well as place an artificial constraint on the free market.'") (internal citations

17   omitted).  To allow Poynt to claim ownership over the knowledge of the identity of the consultant,

18   who has not been accused of any wrongdoing, would put an undue burden on the innocent

19   consultant and artificially constrain the consultant from freely working in the market.  *See id.*

20        **D.      The Court Should Strike Poynt's Allegations of Fraud And Willful And**
                    **Malicious Misappropriation Should Under Rule 12(f)**

21

22        Poynt's allegations in FAC ¶¶ 13, 16-19, 23, 25-27, 110-113, and 142 that Innowi

23   defrauded by Poynt by fraudulently holding itself out to be a single entity with Whizz should be

24   struck from the FAC as scandalous and immaterial to Poynt's causes of action.  Fed. R. Civ. P.

25   12(f).  Similarly, Poynt's allegations in FAC ¶ 161 that "Innowi's acts of misappropriation were

26   done willfully and maliciously" should be struck because "[u]nder California law, a corporate

27   entity is incapable of engaging in willful and malicious conduct for purposes of punitive damages

28   liability."  *Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc.*, No. 14-CV-00362-BLF,

1  2014 WL 3705350, at *4 (N.D. Cal. July 24, 2014) (striking allegations of willful and malicious

2  trade secret misappropriation by corporate entity).

3      Motions to strike should be granted where "allegations in the pleading have no possible

4  relation to the controversy, and may cause prejudice to one of the parties." *Id.* at *3 (citation

5  omitted).  The Ninth Circuit has affirmed striking allegations of fraud under 12(f) where the

6  allegations are unnecessary to the pleaded claims because they would "create[] serious risk of

7  prejudice . . ." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd as to attorneys'*

8  *fees*, 510 U.S. 517, 114 (1994) (rejecting party's argument that the "allegations [of fraud] were not

9  meant to constitute an independent [claim], but rather to present 'relevant background and

10  foundational facts' . . . to support his claim of Fantasy's material breach of [an agreement].").

11  Here, Poynt has chosen not to plead any theories of fraud but has included numerous accusations

12  against Innowi that are unfounded, inflammatory, contradicted by Poynt's own admissions, and

13  unnecessary to its pleaded claims.

14      According to Poynt, Innowi's "representations and conduct" falsely claiming to be a part

15  of Whizz induced Poynt into signing the Term Sheet.  FAC ¶ 142.  Poynt's inflammatory and

16  immaterial allegations against Innowi are partly captured in paragraph 142 of the FAC which

17  states:

18      Insofar as Innowi claims that terms in the [Term Sheet] pertaining to
       Whizz are not binding on it, **Poynt relied on Hasnain's representations**
19      **and conduct indicating that Innowi was part of Whizz**.  Hasnain knew
       that Innowi was not part of Whizz, and knew (from the terms of the [Term
20      Sheet]) that Poynt had been led to believe that Innowi was part of Whizz
       . . . Put differently, **had Hasnain not mislead Poynt into believing that**
21      **Whizz and Innowi were part of a single entity, Poynt would not have**
       **signed the [Term Sheet]** without clarifying (on a provision by provision
22      basis) that Innowi was bound by each of the specific terms of the [Term
       Sheet] . . .
23

24  *Id.* (emphasis added).  Poynt goes so far as to say it would not have signed the Term

25  Sheet obligating Whizz and not Innowi, *but for* Innowi "mislead[ing] Poynt into

26  believing that Whizz and Innowi were part of a single entity."  *Id.*[5]  But Poynt's

_____

27  [5] These allegations of fraud are irrelevant.  The Term Sheet has different provisions for Innowi
   and Whizz, and Poynt cannot rewrite those terms merely by accusing Innowi that it
28  misunderstands a deal it negotiated and signed.

MOTION TO DISMISS AND MOTION TO STRIKE                    CASE NO. 5:18-CV-05814

1    erroneous beliefs are immaterial to its claim for breach of contract.

2         Poynt has not asserted a claim for fraud, nor could it.  Instead of focusing on any

3    alleged wrongdoing by Innowi, Poynt merely recites how it came to form a mistaken

4    belief that Innowi was a single entity with Whizz and then complains that Innowi never

5    corrected that belief.  FAC ¶¶ 12-29.  These scandalous and inflammatory accusations

6    against Innowi are immaterial to Poynt's claims for breach of the NDA or the Term

7    Sheet.  Further, the allegations of fraud are contradicted by Poynt's own admissions in

8    the Complaint and thus can have no bearing on any causes of action.  *See, e.g.*, *Lovesy v.*

9    *Armed Forces Benefit Ass'n*, No. C 07-2745 SBA, 2008 WL 4856350, at *7 (N.D. Cal.

10   Nov. 7, 2008) (striking pleaded allegations that were contradicted by documents cited in

11   complaint as not pertinent to any claims); *see also Fantasy*, 984 F.2d 1528 (affirming

12   district court's order striking allegations of fraud that were not necessary to any claims).

13        Poynt's allegations that Innowi was aware of Poynt's mistaken belief but failed to

14   distinguish Innowi from Whizz are belied by Poynt's other allegations and the documents that

15   Poynt attached to the FAC.  Indeed, Poynt's allegation that "no one at Whizz or Innowi ever

16   suggested [that Innowi was not part of Whizz]" is patently false in view of Poynt's own

17   allegations.  For example, Poynt alleges that on April 23, 2014, *two months before Poynt and*

18   *Innowi signed the Term Sheet* (the first contract signed by the parties), Innowi provided a

19   PowerPoint to Whizz titled "Whizz/Innowi Inc. Poynt Tablet."  FAC ¶ 23.  Poynt admits that this

20   PowerPoint included a footer explicitly stating that the presentation was "Innowi Inc.

21   Confidential."  *Id.*  Poynt even admits that Innowi had its own website at that time and "*publicly*

22   emphasized that its core team's prior experience related primarily to mobile and wireless

23   telecommunications products . . ."  *Id.* ¶ 30 (emphasis added).  Innowi even explicitly hand-wrote

24   "Innowi" into the signature block of the Term Sheet (FAC, Ex. B) before signing.

25

26

27

28

1

## IV.  <u>CONCLUSION</u>

2      For the above stated reasons, the Court should dismiss the FAC for failure to state a claim.

3

4  Dated: April 8, 2019                              Respectfully submitted,

5

6                                                   By: */s/ Neel Chatterjee*
                                                       Neel Chatterjee (SBN 173985)
7                                                      *nchatterjee@goodwinlaw.com*
                                                       Luc Dahlin (SBN 305732)
8                                                      *ldahlin@goodwinlaw.com*
                                                       **GOODWIN PROCTER LLP**
9                                                      601 Marshall Street
                                                       Redwood City, CA 94063
10                                                     Tel.: +1 650 752 3100
                                                       Fax.: +1 650 853 1038

11                                                     *Attorneys for Defendant*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28