1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

POYNT CORPORATION,              )   CV-18-5814-BLF
5                               )
                  PLAINTIFF,    )   SAN JOSE, CALIFORNIA
6                               )
          VS.                   )   FEBRUARY 21, 2019
7                               )
INNOWI, INC.,                   )   PAGES 1-23
8                               )
              DEFENDANT.        )
9                               )
_____ )
10
              TRANSCRIPT OF PROCEEDINGS
11     BEFORE THE HONORABLE BETH LABSON FREEMAN
             UNITED STATES DISTRICT JUDGE
12

13                A P P E A R A N C E S

14

15     FOR THE PLAINTIFF:    **BY:  JACOB MARCUS HEATH**
                                  **WILL HUSSEIN MELEHANI**
16                           ORRICK, HERRINGTON & SUTCLIFFE
                             405 HOWARD STREET
17                           SAN FRANCISCO, CA 94105

18

19     FOR THE DEFENDANT:    **BY:  LUCAS H. DAHLIN**
                                  **NEEL CHATTERJEE**
20                           GOODWIN PROCTER LLP
                             601 MARSHALL STREET
21                           REDWOOD CITY, CA 94063

22

23     OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                     CERTIFICATE NUMBER 13185
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER

1    SAN JOSE, CALIFORNIA                FEBRUARY 21, 2019

2                   P R O C E E D I N G S

3    (COURT CONVENED AT 9:14 A.M.)

4        THE CLERK:  NEXT MATTER IS POYNT CORPORATION VERSUS

5    INNOWI INC.  CASE CV 18-5814.

6        MR. HEATH:  GOOD MORNING, YOUR HONOR.

7    JACOB HEATH FROM ORRICK HERRINGTON & SUTCLIFFE ON BEHALF

8    OF POYNT.  I'M HERE WITH MY COLLEAGUE, WILL MELEHANI, WHO WILL

9    BE MAKING ARGUMENT TODAY.

10        THE COURT:  GOOD MORNING.

11        MR. DAHLIN:  GOOD MORNING, YOUR HONOR.

12    LUKE DAHLIN WITH MY COLLEAGUE NEEL CHATTERJEE ON BEHALF OF

13    DEFENDANT INNOWI.

14        THE COURT:  ALL RIGHT.  GOOD MORNING.

15    THIS IS INNOWI'S MOTION TO DISMISS.  I CERTAINLY WANT TO

16    HEAR ARGUMENT AND GIVE YOU THE OPPORTUNITY TO GO OVER SOME

17    THINGS.  LET ME GIVE YOU SOME OF MY INITIAL THOUGHTS SO THAT

18    YOU CAN RESPOND TO THEM.

19    I AM DOUBTFUL THAT THE ALTER EGO CLAIM HAS BEEN ADEQUATELY

20    ALLEGED, IT ACTUALLY REQUIRES QUITE A BIT OF FACTUAL PLEADING.

21    IN TERMS OF THE THIRD CLAIM FOR BREACH OF THE DEVELOPMENT

22    AGREEMENT, I AM NOT SEEING SPECIFIC PLEADING AS TO WHAT

23    PORTIONS OF THE PATENTS AT ISSUE, CLAIMS, WERE DERIVED FROM THE

24    INTELLECTUAL PROPERTY THAT THE PLAINTIFF CLAIMS IT CONTINUES TO

25    OWN UNDER THE DEVELOPMENT AGREEMENT.

1          AND ON THE DEFEND TRADE SECRETS ACT CASE -- CLAIM,

2     RATHER -- I DON'T THINK THE TRADE SECRETS HAVE BEEN ADEQUATELY

3     ALLEGED.  BUT I WANT -- I DON'T WANT TO GET BOGGED DOWN IN A

4     PERPETUAL MOTION TO DISMISS CYCLE THAT'S SO BURDENSOME IN ORDER

5     TO GET THAT TO HAPPEN.

6          SO I WANT TO TALK ABOUT IF I DECIDE ULTIMATELY THAT IT'S

7     NOT ADEQUATE, I WANT TO TALK ABOUT A BETTER MECHANISM BECAUSE

8     THINGS DO BOG DOWN THERE.

9          SO WITH THOSE THOUGHTS, LET'S START WITH THE DEFENDANT,

10    LET ME HEAR YOUR ARGUMENT.

11              MR. DAHLIN:  THANK YOU, YOUR HONOR.

12         AND I WOULD JUST LIKE TO THANK THE COURT FOR GIVING US THE

13    OPPORTUNITY TO ARGUE THIS MOTION TODAY.

14              THE COURT:  OH, IT'S MY PLEASURE.  BUT AS YOU KNOW,

15     I'M NOT DOING ANYTHING SPECIAL, I LIKE ARGUMENT IN EVERY CASE,

16     SO I WELCOME YOU AND I'M LOOKING FORWARD TO A ROBUST ARGUMENT.

17              MR. DAHLIN:  THANK YOU, YOUR HONOR.

18         AT ITS HEART, I THINK YOU TOUCHED ON A LOT OF THE POINTS

19    HERE.  YOU KNOW, THIS CASE IS ABOUT AN ALLEGATION OF STOLEN

20    TECHNOLOGY.

21         YOU KNOW, PLAINTIFF SAYS THAT INNOWI BASICALLY TOOK THE

22    TECHNOLOGY AND THEN USED IT TO DEVELOP THESE PATENTS AND

23    PRODUCTS.  BUT THE COMPLAINT IS SO UNCLEAR ABOUT WHAT THE

24    ACTUAL TECHNOLOGY IS, THAT IT'S BEEN A LITTLE DIFFICULT FOR US

25    TO DEFEND THE CASE AT THIS POINT.

1          WITH REGARDS TO THE TRADE SECRETS CLAIMS, PLAINTIFFS KIND

2     OF ADOPTED A SHOTGUN STYLE APPROACH OF THE PLEADING, WHERE IT'S

3     LISTED NON-EXCLUSIVE, LONG LAUNDRY LIST OF POTENTIAL TRADE

4     SECRETS THAT THEY MAY HAVE, COUPLED WITH CONCLUSORY ALLEGATIONS

5     THAT DEFENDANT THEN USED THESE TRADE SECRETS TO GET THE PATENTS

6     AND PRODUCTS.

7          SO, YOU KNOW, OUR POSITION IS THAT BEFORE FILING THE

8     LAWSUIT, PLAINTIFF SHOULD KNOW WITH SOME SPECIFICITY, YOU KNOW,

9     WHAT THE TECHNOLOGY WAS AND HOW IT WAS USED.  AND WE DON'T SEE

10    THAT HERE.

11         I THINK WE CAN KIND OF GET PASSED THE NDA.  AS YOU SAID,

12    THEY HAVEN'T REALLY PLED THE ALTER EGO, BASED ON THE FACE OF

13    IT, THEY HAVEN'T SIGNED ANY NDA'S.

14         AND I THINK YOU REALLY HIT ON THE KEY POINT TOO AS WELL

15    WITH THE BUSINESS TERM SHEET, OR WHAT THEY ARE CALLING THE

16    DEVELOPERS AGREEMENT, IN THAT THEY HAVEN'T ACTUALLY LOOKED AT

17    THE CLAIMS OF THE PATENTS.

18         ONE MORE POINT ON THAT THAT WE WOULD LIKE TO RAISE IS THAT

19    SIX MONTHS INTO THE PROJECT, POYNT UNILATERALLY TERMINATED THE

20    AGREEMENTS AND THE PROJECT SAID THAT IP ARISING FROM THE

21    PROJECTS WOULD BELONG TO POYNT.  THAT DOESN'T MEAN THAT ANY

22    FUTURE IP IN THE SAME SUBJECT MATTER WOULD BELONG TO POINT.

23         IN FACT, IN THE OPPOSITION THEY ADMITTED THAT ANYTHING

24    DEVELOPED AFTER THE AGREEMENTS BY INNOWI WOULDN'T BE SUBJECT TO

25    THE AGREEMENTS ANYWAYS, AND THERE'S NO DISPUTE THAT THE FIRST

1    PATENT APPLICATION HERE WAS FILED NINE MONTHS AFTER THAT

2    SIX-MONTH PROJECT HAD ENDED, AND THE CONTINUATION OF OUR

3    PATENTS WERE FILED THREE YEARS AFTER THE PROJECT ENDED.

4            THE COURT:  SO BASED ON THE PLEADING TODAY, IT'S VERY

5    HARD FOR ME TO DETERMINE WHETHER YOUR ARGUMENT THAT TOO MUCH

6    TIME WENT BY BETWEEN THE TERMINATION AND THE FILING OF THE

7    PATENT APPLICATION TO SIGNIFY THAT THIS IS THE TECHNOLOGY

8    IMBEDDED IN THE PATENT, WAS NOT DERIVED FROM THE DEVELOPMENT

9    WORK.

10           BUT I THINK -- I MEAN, TO ME, THAT GOES BACK TO THE POINT

11   OF, WE NEED TO SEE A DESCRIPTION OF WHAT IT IS IN THE PATENT

12   THAT POYNT CLAIMS WAS DERIVED.  BECAUSE YOU ARE LESS IN THE

13   DARK THAN I AM, BUT I'M IN THE DARK AS TO WHAT IT IS.

14           AND UNTIL I SEE THAT CHART, AS IT WERE, IT'S REALLY HARD

15   TO KNOW WHERE WE ARE GOING.

16           MR. DAHLIN:  I THINK THAT'S FINE.

17           AND I'M HAPPY TO ADDRESS THE TRADE SECRET LIST, BECAUSE I

18   THINK THAT IS REALLY THE HEART OF THE ISSUE AS TO WHAT THIS

19   TECHNOLOGY IS.

20           THE COURT:  RIGHT.  SURE.

21           SO -- RIGHT.  THE DESCRIPTION OF THE TRADE SECRETS IS THE

22   OTHER SIDE OF THE COIN OF WHAT'S IN THE PATENT, ISN'T IT.

23           MR. DAHLIN:  CORRECT, CORRECT.

24           SO BOTH WE NEED TO KNOW WHAT WAS DEVELOPED DURING THE

25   PROJECT, AND THEN HOW THAT LATER SHOWED UP IN THE PATENTS OR

1    PRODUCTS THAT INNOWI HAS MADE.

2        SO WE ARE MISSING BOTH OF THOSE PIECES WHERE WE DON'T KNOW

3    WHAT WAS DEVELOPED, WHAT THEY ARE SAYING WAS DEVELOPED DURING

4    THIS PROJECT.  AND WE ALSO DON'T KNOW WHAT THAT WAS, AND HOW IT

5    SHOWED UP LATER IN THE PRODUCTS IN THE PATENTS.

6        THE COURT:  OKAY.  AND THE ARRAY OF TRADE SECRETS

7    THAT IS ALLEGED IN THE COMPLAINT GOES BEYOND TECHNOLOGY.  AND

8    SOME OF IT IS CUSTOMER LISTS AND MATERIALS LISTS AND SUPPLIERS

9    WHICH ARE NOT GOING TO SHOW UP IN A PATENT, OBVIOUSLY, BUT CAN

10   BE TRADE SECRETS, IF ADEQUATELY PROTECTED, AND DERIVED

11   INDEPENDENT ECONOMIC VALUE.

12       ANYTHING ELSE?

13       MR. DAHLIN:  IF YOU'RE WILLING TO GO THROUGH ANYTHING

14   MORE SPECIFIC OF THE TRADE SECRET LIST, I HAVE A SMALL HANDOUT

15   COMPARING THIS TO -- MAY I HAND IT TO --

16       THE COURT:  YES, PLEASE.

17       MR DAHLIN:  AND CAN I GIVE A COPY AS WELL, AT THIS

18   TIME, TO THE LAW CLERK.

19       THE COURT:  YES, THAT WOULD BE VERY HELPFUL AS WELL.

20   THANK YOU.

21       MR. DAHLIN:  SO THIS IS JUST VERY QUICKLY COMPARING

22   THE TRADE SECRET ALLEGATIONS IN THE COMPLAINT TO TRADE SECRET

23   ALLEGATIONS THAT HAVE BEEN REJECTED IF THIS DISTRICT AND THE

24   CENTRAL DISTRICT.

25       AND I THINK OUR BIG PROBLEMS HERE ARE, ONE, THAT IT'S A

1    WHOLE NON-EXCLUSIVE LAUNDRY LIST WHERE IT SAYS IT INCLUDES X, Y

2    AND Z, BUT IS NOT LIMITED TO X, Y AND Z, AND IT'S ALSO GOT THIS

3    CATCH-ALL INFORMATION AND CATEGORIES.

4         IN OURS, WE HAVE A LIST OF INFORMATION CRUCIAL TO THE

5    DEVELOPMENT AND EVENTUAL SUCCESS OF POYNT'S PRODUCTS, WHICH

6    COULD POTENTIALLY BE ANYTHING, WE ARE NOT SURE.

7         AND, YOU KNOW, THIS IS THE SAME KIND OF PLEADING THAT'S

8    BEEN REJECTED.  FOR EXAMPLE, IN THE VENDAVO CASE WHICH IS IN

9    THE MIDDLE COLUMN HERE, IT ALSO, YOU KNOW, INCLUDES SUCH

10   INFORMATION.  THEY HAVE SOME SPECIFICS LIKE SOURCE CODE,

11   CUSTOMER LISTS, BUT IT'S SO BROAD THAT THE VENDAVO COURT SAID

12   THAT WHAT THEY HAVE DONE IS THEY HAVE SET OUT THE PURPORTED

13   TRADE SECRETS IN BROAD, CATEGORICAL TERMS, MORE DESCRIPTIVE OF

14   THE TYPES OF INFORMATION THAT MAY BE TRADE SECRETS, RATHER THAN

15   ANY PARTICULAR LISTS THAT THE PLAINTIFF ACTUALLY HAS THE BASIS

16   TO BELIEVE WERE MISAPPROPRIATED.

17        THE COURT:  SO LET ME ASK YOU ABOUT THE SOURCE CODE.

18   CERTAINLY IN A PUBLIC FILING, THAT'S ALL ANYONE IS GOING

19   TO SAY, BUT WE HAVE WAYS AROUND THAT.

20        SO ARE YOU SUGGESTING THAT IN ORDER TO MOVE FORWARD, THAT

21   POYNT HAS TO ACTUALLY ATTACH A COPY OF ITS SOURCE CODE THAT IT

22   BELIEVES WAS MISAPPROPRIATED?

23        MR. DAHLIN:  I DON'T THINK THAT WOULD BE NECESSARY.

24        THE PROBLEM HERE IS THAT THEY ARE NOT JUST SAYING IT WAS

25   SOURCE CODE.  IF THEY WERE JUST SAYING THE SOURCE CODE WAS

1    TAKEN AND THEN ENDED UP IN THE INNOWI PRODUCTS, THAT WOULD BE

2    FAIRLY SPECIFIC AND COURTS HAVE ALLOWED THAT.

3         THE PROBLEM IS THAT THEY SAY SOURCE CODE, OTHER THINGS,

4    YOU KNOW, DEVELOPMENT PRODUCTS, MATERIALS, AND THEN LISTS OF

5    INFORMATION.

6         THE COURT:  SO LET'S BREAK THIS DOWN A LITTLE BIT,

7    BECAUSE YOU ARE RIGHT, I MEAN, IT'S SORT OF A LIST OF THINGS.

8         BUT IF WE SEPARATE THEM OUT, AND THE TRADE SECRETS NEED TO

9    BE SEPARATED, IF THERE WAS AN ALLEGATION THAT YOU STOLE OUR

10   SOURCE CODE FOR A PARTICULAR PRODUCT, YOU ARE SAYING IF THAT

11   WAS THE ONLY TRADE SECRET IN THE CASE, THAT YOU WOULD HAVE NO

12   BEEF ABOUT HOW IT WAS ALLEGED.

13        MR. DAHLIN:  IF THEY HAD A REASONABLE BASIS TO

14   BELIEVE THAT WE HAD MISAPPROPRIATED SOMETHING SPECIFIC LIKE

15   THAT, THEN THAT WOULD BE ENOUGH.

16        THE COURT:  SO THEN YOU WOULD WANT OTHER ALLEGATIONS,

17   SUCH AS POINTING TO WHERE IN THE PATENT IT WAS USED?

18        MR. DAHLIN:  OR -- YEAH, SOME OTHER FACTS TO SUPPORT

19   THAT WE HAD ACTUALLY TAKEN THE SOURCE CODE AND USED IT.

20        THE COURT:  BECAUSE YOU DON'T HAVE TO HAVE USE UNDER

21   DTSA, YOU CAN HAVE THE DISAPPROPRIATION ITSELF AS A FOUNDATION.

22        AND SO THAT'S WHY I'M JUST REALLY TRYING TO UNDERSTAND

23   WHAT PARTICULARITY YOU WOULD BE SATISFIED WITH.  AND I'M USING

24   THE SOURCE CODE, AS OPPOSED TO THESE OTHER THINGS, BECAUSE

25   SOURCE CODE GENERALLY IS RECOGNIZED AS INCLUDED AS TRADE

1       SECRETS.  SOME OF THESE OTHER THINGS AREN'T NECESSARILY

2       PROTECTED, AND IT DEPENDS ON HOW THE COMPANY HAS TREATED THEM.

3            SO YOU ARE NOT -- AND SO THESE TWO CASES YOU CITE TO ME,

4       YOU'VE HIGHLIGHTED THAT THEY REJECTED THE IDENTIFICATION OF

5       SOURCE CODE, BUT WERE THEY ACTUALLY REJECTING THE WHOLE LIST AS

6       HAVING SOME INFIRMITIES, AS OPPOSED TO EACH ITEM WITHIN THE

7       LIST BEING INACCURATE OR INCOMPLETE?

8            MR. DAHLIN:  CORRECT.

9            THE PROBLEM IS THE LIST IS SO BROAD AND FULL OF THESE

10      CATEGORIES OF POTENTIAL TRADE SECRETS, THAT IT'S NOT LIMITED TO

11      WHAT THEY MIGHT ACTUALLY BELIEVE WE TOOK, IT'S JUST ANYTHING,

12      BASICALLY THIS IS A LIST OF POTENTIAL TRADE SECRETS THEY MIGHT

13      OWN, RATHER THAN ANYTHING THEY HAVE A REASONABLE BASIS TO

14      BELIEVE WE MISAPPROPRIATED.

15           THE COURT:  RIGHT.

16           WELL, CERTAINLY AS WE GET DOWN THROUGH THE LIST FROM THE

17      COMPLAINT, THE THINGS LIKE LISTS OF OPEN DEVELOPMENT ISSUES,

18      LISTS OF SUPPLIERS AND VENDORS USED TO SOURCE COMPONENTS PARTS

19      AND OTHER SERVICES NECESSARY.

20           IT'S NOT CLEAR THAT ALL OF THOSE EVEN WOULD BE TRADE

21      SECRETS, SO WE WOULD HAVE TO REALLY SEE MORE DETAIL IS WHAT YOU

22      ARE SUGGESTING.

23           MR. DAHLIN:  CORRECT.

24           AND ONE SUGGESTION WE HAVE IS THAT THE PARTIES HAVE AGREED

25      THAT THEY WILL GIVE US A 2019.210 DISCLOSURE.

1          THE COURT:  YES.  GOOD.

2          MR. DAHLIN:  THAT HASN'T HAPPENED YET.  THEY HAVE

3     ASKED FOR AN EXTENSION TO GIVE US THAT, WE HAVE GRANTED AN

4     EXTENSION.

5          SO THE POTENTIAL SOLUTION WOULD BE THEY ATTACH THAT TO THE

6     COMPLAINT UNDER SEAL, TO ACTUALLY GIVE US A SPECIFIC LIST OF

7     THE TRADE SECRETS THEY BELIEVE WERE MISAPPROPRIATED.

8          THE COURT:  SO 2019.210, UNDER THE CALIFORNIA RULES,

9     DOESN'T REQUIRE THAT TO BE ATTACHED TO THE COMPLAINT, BUT OF

10     COURSE IT DOESN'T APPLY TO THE DEFEND TRADE SECRETS ACT EITHER.

11          I DON'T SEE ANY NEED TO BOG DOWN THE COMPLAINT WITH THE

12     2019.210 PROCESS.  AND GENERALLY WHAT I'M LOOKING FOR IS THAT I

13     WILL GET THROUGH ALL THE BIGGER ISSUES ON THE COMPLAINT, AND

14     THIS IS BIG, BUT THIS CAN BE HANDLED MUCH MORE RAPIDLY THROUGH

15     THE DISCOVERY PROCESS AS THAT BAR TO DISCOVERY ON THE TRADE

16     SECRETS, AND WORK IT THROUGH WITH THE MAGISTRATE JUDGE ASSIGNED

17     TO THE CASE, WHICH IS WHAT I WOULD LIKE TO DO.

18          BECAUSE YOU CAN TURN THAT AROUND WITH THREE-PAGE LETTER

19     BRIEFS AND GET TO A POINT WHERE IT SHOULD HAPPEN PRETTY

20     RAPIDLY, AT LEAST BY COMPARISON TO HOW LONG IT TAKES IN MY

21     COURT.

22          MR. DAHLIN:  THAT SOUNDS FINE TO US.

23          THE COURT:  IS THAT REASONABLE TO YOU?

24          MR. DAHLIN:  YES.  AND I THINK THAT'S WHERE WE WERE

25     GOING WITH THIS.

1          THE COURT:  ALL RIGHT.

2      LET ME TURN TO PLAINTIFF AND SEE WHAT WE'VE GOT HERE.

3          MR. MELEHANI:  SURE.

4      I THINK I WILL START WITH THE ALTER EGO ISSUE, BECAUSE

5  IT'S THE ONE YOU HIGHLIGHTED WANTING TO HEAR MORE ABOUT.  I

6  THINK IT HELPS TO REVIEW A BIT OF THE FACTUAL BACKGROUND AS TO

7  HOW THIS AGREEMENT PROJECT CAME TO BE.

8      POYNT WAS LOOKING TO HIRE A DESIGN CONTRACTOR TO ASSIST IT

9  WITH THE HARDWARE DEVELOPMENT OF ITS NEW PAYMENT TERMINAL

10  PRODUCT, AND THEY WERE RECOMMENDED WHIZZ SYSTEMS BY A

11  COLLEAGUE.  AND THAT WAS IN MARCH 2014.

12      THEY BEGAN NEGOTIATING WITH WHIZZ.  AND PART OF THAT

13  REQUIRED THEM TO SIGN THE NDA, WHICH WAS EXHIBIT A.  AT SOME

14  POINT, WHIZZ REPRESENTED THAT IT HAD THIS TEAM OF SPECIALISTS

15  WHO WERE FOCUSED ON MOBILE DEVICES WHO WOULD BE GREAT FOR THIS

16  PROJECT.

17      AND THE NEGOTIATIONS CONTINUED BACK AND FORTH WITH WHIZZ,

18  AND IT SORT OF -- IT'S NOT COMPLETELY CLEAR FROM THE DOCUMENTS

19  WE HAVE, BUT AT SOME POINT INNOWI SORT OF STEPPED IN AS A

20  SEPARATE ENTITY, THAT SPECIAL TEAM WITHIN WHIZZ TURNED OUT TO

21  BE A SEPARATE COMPANY.

22      AND SO THAT EXPLAINS WHY, IN A LOT OF DOCUMENTS, YOU SEE

23  WHIZZ'S NAME SHOWING UP, BUT THEN SUDDENLY INNOWI GOES ON AND

24  DOES THE PROJECT.

25          THE COURT:  RIGHT.

1          MR. MELEHANI:  AND SO ALTER EGO, I THINK, IS ONE OF

2     THE BEST WAYS TO KIND OF MAP THE LAW ON TO THE CIRCUMSTANCES

3     AND CONDUCT OF WHAT OCCURRED HERE.  AND I UNDERSTAND IN MANY

4     CASES, ALTER EGO IS STRICTLY USED FOR PURPOSES OF PIERCING THE

5     CORPORATE VEIL FOR DAMAGES PURPOSES, BUT THAT'S NOT WHAT WE ARE

6     DOING HERE, YOU KNOW, IT'S MORE OF A LIABILITY CONSIDERATION.

7          THE COURT:  SURE.

8          MR. MELEHANI:  IN THE ZORAN CORP CASE, WHERE IT SETS

9     FORTH THE TWO PARTS OF THE TEST, THE UNITY OF INTEREST AND THE

10    INEQUITABLE RESULT, AND UNITY OF INTEREST IS REALLY A TOTALITY

11    OF THE CIRCUMSTANCES-TYPE TEST.

12          THE COURT:  WELL, BUT I THINK YOU ARE REALLY MISSING

13    SOME OF THE KEY PARTS.

14        I DON'T THINK SHARING MODEL SPACE IS VERY IMPORTANT.  AND

15    I THINK THAT THE OVERLAPPING OFFICERS OR EVEN A FEW OVERLAPPING

16    DIRECTORS HAVE BEEN FOUND BY THE NINTH CIRCUIT TO REALLY NOT BE

17    ENOUGH, STANDING ALONE.

18        AND SO WHAT I'M REALLY MISSING IS YOUR ALLEGATIONS THAT

19    INNOWI FAILED TO RESPECT ITS CORPORATE OBLIGATIONS.  DOES IT

20    HAVE BYLAWS?  DOES IT HAVE A CHARTER?  DOES IT HAVE ITS OWN

21    BOARD?  DOES IT HOLD ITS OWN MEETINGS?

22        SO, YOU KNOW, I'M MISSING ALL OF THAT.  AND I'M CERTAINLY

23    GLAD TO GIVE YOU THE OPPORTUNITY TO AMEND, BUT IT'S A BIG STEP

24    TO IMPOSE THE OBLIGATIONS OF THE NDA ON ALTER EGO WITHOUT MORE

25    ALLEGED.

```
 1          NOW YOU HAVE THE ALTERNATE THEORY, WHICH -- AND YOU CITED

 2     THIS PACHMAYR CASE TO ME ON THE TAKING THE TOTALITY OF THE

 3     CIRCUMSTANCES TO DETERMINE IF A CONFIDENTIAL RELATIONSHIP CAN

 4     BE IMPOSED DUE TO THE RELATIONSHIP OF THE PARTIES TO HAVE A

 5     DUTY TO PROTECT THE SECRET.

 6          I THOUGHT THAT WAS -- I MEAN, THIS CASE IS REALLY RIGHT ON

 7     POINT, AND I THOUGHT IT CERTAINLY IS -- WITH THIS CASE AND WHAT

 8     YOU'VE ALLEGED, I THINK IT'S ENOUGH TO GO FORWARD ON THAT.  I

 9     DON'T KNOW IF IT WILL BE SUCCESSFUL, BUT I THINK THAT CERTAINLY

10     IS ANOTHER AVENUE FOR YOU THAT YOU HAVE IDENTIFIED.

11               MR. MELEHANI:  RIGHT.

12          AND I AGREE, I THINK WHAT YOUR HONOR IS SUGGESTING IS THAT

13     THERE WOULD STILL BE A BASIS TO CLAIM CONFIDENTIALITY FOR THE

14     TRADE SECRETS.

15               THE COURT:  THAT'S RIGHT.  NOT WITH THE NDA, PER SE.

16               MR. MELEHANI:  RIGHT.

17          I AGREE WITH YOU THAT THERE'S JUST THE OFFICE SPACE OR

18     JUST THE OVERLAPPING OFFICERS, STANDING ALONE, ARE INSUFFICIENT

19     TO CREATE AN THOR EGO OBLIGATION.

20          BUT WHEN YOU LOOK AT THE TOTALITY OF THE CIRCUMSTANCES

21     HERE AND YOU LOOK AT THE FACT THAT NOW WE ARE, WHIZZ WAS

22     HOLDING OUT INNOWI AS PART OF ITS OWN TEAM, WHIZZ WAS

23     NEGOTIATING WITH POYNT FOR A PROJECT THAT APPARENTLY INNOWI WAS

24     GOING TO BE PERFORMING ALL ALONG, AND THEN YOU HAVE THE FACT

25     THAT INNOWI WAS USING WHIZZ'S E-MAILS, THE FACT THAT INNOWI WAS
```

1    SUBMITTING PAPERWORK UNDER WHIZZ'S NAME, THE FACT THAT THAT

2    DEVELOPMENT AGREEMENT IS EVENTUALLY SIGNED, DESPITE THE FACT

3    THAT IT SAYS WHIZZ ALL OVER IT IS, IT'S EVENTUALLY SIGNED

4    SIMPLY BY WRITING "SLASH INNOWI."  THE TWO COMPANIES WERE

5    HOLDING THEMSELVES OUT AS BEING ESSENTIALLY THE SAME ENTITY.

6         THE COURT:  SO IF WE WERE ARGUING THE DEVELOPMENT

7    AGREEMENT, I MIGHT FEEL DIFFERENTLY THAN THE NDA.

8         AND SO IT'S INTERESTING, OBVIOUSLY THE NDA IS WHAT IT IS,

9    AND SO MANY OF THESE NDA'S REQUIRE FURTHER ACCEPTANCE OF THE

10   OBLIGATION BY ANY CONTRACTORS OR OTHER PARTIES, AND THIS ONE

11   JUST DOESN'T.

12        AND SO THAT'S THE WAY IT IS.  YOU KNOW, THAT'S THE GOOD

13   THING ABOUT BEING THE LAWYERS, YOU DON'T CREATE THE FACTS, YOU

14   JUST HAVE TO ARGUE THEM, SO YOU DON'T HAVE TO TAKE THE

15   RESPONSIBILITY FOR THAT.  BUT IT KIND OF STANDS OUT, ESPECIALLY

16   IF, AS YOU SAY, THIS WAS THE WAY IT WAS SEEN.

17        SO I'M GOING TO GIVE YOU THE CHANCE TO GIVE ME MORE

18   ALLEGATIONS ON ALTER EGO, BUT I THINK YOU ARE MISSING SOME OF

19   THE CORE FACTORS.  AND YOU KNOW, ALTER EGO, YOU KNOW, YOU HAVE

20   OTHER FACTS IN THIS CASE THAT SHOW THE CONNECTION BETWEEN THE

21   TWO COMPANIES.  I UNDERSTAND THAT.

22        BUT THIS IS -- CORPORATIONS ORGANIZED WITH WHOLLY OWNED

23   SUBSIDIARIES AND DIRECTION FROM THE PARENT COMPANY TO THE

24   SUBSIDIARY IN MANY WAYS.  AND FOR ME TO SHADE THE LAW FOR THIS

25   CIRCUMSTANCE, REALLY OPENS THE DOOR TO MUCH MORE SIGNIFICANT

1    ISSUES ON ALTER EGO THEORY OF LIABILITY.

2         AND MY READING OF THE NINTH CIRCUIT IS THAT THEY HAVE BEEN

3    VERY PROTECTIVE OF THE SEPARATE IDENTITIES OF COMPANIES, UNLESS

4    A CERTAIN SET OF CRITERION CAN BE MET.

5         SO I DON'T FEEL YOU'VE ALLEGED THOSE YET.

6              MR. MELEHANI:  IF I MAY.

7         IT COULD BE THAT ALTER EGO ISN'T QUITE A PERFECT FIT FOR

8    THE FACTUAL CIRCUMSTANCES.

9              THE COURT:  RIGHT.

10             MR. MELEHANI:  I BELIEVE THERE MAY BE SOME AGENCY

11   THEORIES THAT COULD POTENTIALLY COVER IT ON DISCLOSED

12   PRINCIPAL, SOMETHING ALONG THOSE LINES.

13        WOULD IT BE APPROPRIATE TO ADD THINGS LIKE THAT IF WE DO

14   GO BACK AND AMEND?

15             THE COURT:  YOU KNOW, I WILL GIVE YOU LEAVE TO AMEND

16   TO ADD OTHER THEORIES.  IT WOULD BE OTHER THEORIES TO BIND

17   INNOWI TO THE NDA.

18        SO IT'S LIMITED, BUT YES, I'M NOT GOING TO HAVE YOU GO

19   THROUGH SEPARATE MOTION FOR LEAVE TO AMEND ON THAT.  AND I'M

20   COMFORTABLE WITH THAT.  BUT I AM GOING TO GRANT THE MOTION TO

21   DISMISS ON THE ALTER EGO ISSUE, WHICH IS PRETTY SIGNIFICANT

22   HERE.

23        THE ASSIGNMENT WAIVER ARGUMENT, I DIDN'T REALLY WARM TO SO

24   MUCH, BUT THAT'S ONLY AN ALTERNATE THEORY, SO I'M NOT REALLY

25   TOO CONCERNED ABOUT THAT.

1      LET'S TALK ABOUT BREACH OF THE DEVELOPMENT AGREEMENT.

2           MR. MELEHANI:  SURE.

3           THE COURT:  SO I THINK, YOU KNOW, IN ONE SENSE, I

4    CERTAINLY UNDERSTAND THE DEFENDANT KNOWS MORE ABOUT WHAT THE

5    PLAINTIFF IS TALKING ABOUT, MORE THAN THE COURT CAN EVER KNOW,

6    BUT UNTIL YOU POINT OUT WHAT IS EMBODIED IN THESE PATENTS THAT

7    WAS DERIVED FROM THE WORK ENCOMPASSED BY THE DEVELOPMENT

8    AGREEMENT, I DON'T THINK THAT INNOWI HAS ENOUGH INFORMATION TO

9    KNOW EVEN HOW TO DEFEND ITSELF.

10          AND SO THERE, WE ARE TALKING ABOUT, REALLY, I THINK THE

11    PATENT CLAIMS.  AND YOU HAVEN'T DONE ANYTHING TO ADDRESS THAT

12    ISSUE.  SO MAYBE YOU COULD TALK TO ME ABOUT THAT A LITTLE BIT.

13          MR. MELEHANI:  WELL, SURE.

14          SO, I MEAN, JUST TO BE CLEAR, THIS IS STILL A BREACH OF

15    CONTRACT ALLEGATION.

16          THE COURT:  SURE.

17          MR. MELEHANI:  AND THE PLEADING STANDARD THAT APPLIES

18    THERE IS THE TWOMBLY IQBAL STANDARD.

19          SO WE ARE OPERATING AT THAT GATEWAY THRESHOLD WHERE THE

20    QUESTION IS JUST, HAVE WE PLAUSIBLY PLED THAT THOSE PATENTS

21    INCLUDE INFORMATION THAT WAS DERIVED FROM THE PROJECT.

22          AND I THINK THAT OUR ALLEGATIONS MORE THAN MEET THAT

23    STANDARD.  THERE'S ABSOLUTELY NO OBLIGATION THAT FOR A BREACH

24    OF CONTRACT WITH THE PATENTS INVOLVED, YOU NEED TO DO SOME SORT

25    OF CLAIM-BY-CLAIM ANALYSIS.  THE CASE THAT INNOWI CITES, THIS

1    UNIVERSAL STABILIZATION TEXT CASE, TO SUGGEST THAT THERE'S SOME

2    SORT OF CLAIM-BY-CLAIM ANALYSIS NECESSARY.  IT IS A CLAIM

3    CONSTRUCTION ORDER FROM -- IT HAS NOTHING TO DO WITH PLEADING

4    STANDARDS.

5              THE COURT:  THAT'S FAIR.  SURE.

6              MR. MELEHANI:  AND TO BE QUITE HONEST, TWO OF THE

7    APPLICATIONS, AT LEAST AT THE TIME WE FILED THIS COMPLAINT,

8    WERE STILL PENDING AND NOT EVEN PUBLIC YET, I CAN'T EVEN SEE

9    THE CLAIMS, SO I CAN'T PERFORM THAT ANALYSIS.

10             THE COURT:  ARE THEY ALL PUBLIC NOW?

11             MR. MELEHANI:  I'M NOT SURE.

12             THE COURT:  OKAY.

13             MR. MELEHANI:  BUT --

14             THE COURT:  OKAY.

15       AND SO I GUESS PART OF THIS GETS WRAPPED UP IN, THEN WE

16   GET TO YOUR TRADE SECRET CLAIMS.  AND SO EVEN IF I PASS OVER

17   THE BREACH OF CONTRACT CLAIM ON YOUR ARGUMENT THAT STANDARD

18   RULE 8(A) PLEADING IS A WHOLE DIFFERENT THING, I STILL NEED THE

19   TRADE SECRETS THAT WERE MISAPPROPRIATED TO BE IDENTIFIED MORE

20   CLEARLY.

21       BUT I'M GOING TO TAKE THAT OFF THE COMPLAINT SO THAT YOU

22   DON'T HAVE TO GET BOGGED DOWN THERE.

23             MR. MELEHANI:  YEAH.

24       AND WE HAVE A LIST, MOSTLY COMPLETED, THAT WE WILL BE

25   SERVING ON THE OTHER SIDE SHORTLY.

1          THE COURT:  SO I'M MINDFUL OF YOUR ARGUMENT ABOUT THE

2     LEVEL OF SPECIFICITY REQUIRED FOR YOUR BREACH OF CONTRACT, BUT

3     I STILL THINK THAT IT'S LIKE A BLACK BOX, WE SHARED WITH YOU

4     OUR CONFIDENTIAL INFORMATION AND YOU PUT IN A PATENT THINGS

5     DERIVED FROM IT.  AND "DERIVED" IS SUCH AN AMORPHOUS TERM, THAT

6     I JUST DON'T EVEN THINK YOU'VE PUT THE DEFENSE ON REASONABLE

7     NOTICE AS TO WHAT YOU ARE TALKING ABOUT.

8          AND SO I'M GOING TO -- I DO NEED MORE SPECIFICITY ON THE

9     BREACH OF CONTRACT CLAIM AS TO WHAT THEY'VE -- AND FOR THE

10    BREACH OF CONTRACT, YOU KNOW, I DON'T KNOW WHETHER IT'S -- I

11    MEAN, THEY CERTAINLY TOOK WITH THEM KNOWLEDGE, I DON'T KNOW

12    WHETHER YOU CLAIM THEY TOOK WITH THEM ACTUAL PAPERWORK OF

13    SOURCE CODE, THEY DIDN'T MEMORIZE, SO THEY HAD IT IN THEIR

14    COMPUTERS.

15         YOU KNOW, I'M JUST NOT CLEAR ON THAT.  SO I'M GOING TO

16    NEED YOU TO BEEF THAT UP A LITTLE BIT FOR ME.

17              MR. MELEHANI:  VERY WELL.

18              THE COURT:  ALL RIGHT.

19         AND THEN, LET'S SEE, THE TRADE SECRETS WE'VE TALKED ABOUT,

20    AND I'M GOING TO PUT -- I DON'T KNOW WHAT THE BEST APPROACH ON

21    THAT IS, WHETHER I SHOULD -- I THINK I'M GOING TO GRANT THE

22    MOTION.  I'M GOING TO DEFER THE MOTION TO DISMISS ON THAT CLAIM

23    TO THE DISCOVERY PROCESS WITH THE INDICATION THAT IT IS

24    DEFICIENT AS OF NOW, BUT I DON'T WANT THAT TO BE -- I DON'T

25    WANT THAT TO HOLD UP THE COMPLAINT.

1      AND SO I'M GOING TO PUT THE ONUS ON PLAINTIFF TO COME BACK

2   WITH THE NEXT DRAFT.  IT WILL BE -- AND THIS WILL BE THE

3   GATEWAY TO YOUR DISCOVERY ON THE TRADE SECRET CLAIM, SO YOU

4   WILL WANT TO MOVE THAT ALONG WITH THE MAGISTRATE JUDGE.

5      AND YOU DO THIS ALL THE TIME, AND I THINK YOU'VE COME IN

6   KNOWING THAT AS WELL, AND I APPRECIATE THAT.

7      OKAY.  ANYTHING ELSE?

8      MR. MELEHANI:  WELL, OPPOSING COUNSEL TOUCHED ON THIS

9   TERMINATION ISSUE.  I'M NOT SURE IF YOUR HONOR WOULD LIKE TO

10   HEAR A BIT ABOUT THAT.

11      THE COURT:  SURE.

12      MR. MELEHANI:  AS I UNDERSTAND THE ARGUMENT, IT'S

13   THAT, FIRST OFF, I THINK THERE WERE SOME COMMENTS THAT WE DO

14   NOT AGREE WITH.

15      WE DO NOT AGREE WITH THE FACT THAT ANYTHING DERIVED -- OR

16   RATHER, ANYTHING CREATED AFTER THE TERMINATION WOULD BE BARRED

17   FROM BEING A BREACH OF THAT TERM.  BECAUSE THE PROVISION IN THE

18   CONTRACT SAYS THAT POYNT OWNS IP DERIVED FROM WORK ON THE

19   PROJECT.

20      I THINK THAT THE POSITION, AND THE BRIEFS KIND OF ARGUE

21   PAST EACH OTHER ON THIS POINT, AS I'M SURE YOU REALIZE.

22      THE COURT:  THAT'S NOT UNUSUAL.

23      MR. MELEHANI:  BUT I THINK TO TRY TO GET BACK ON

24   COURSE THERE, THE THEORY THAT OPPOSING COUNSEL IS USING IS,

25   THEY CITE TO THIS CASE, PETRUS V. NEW YORK, AND THAT CASE CITES

1    THE STATEMENT OF CONTRACTS.

2         AND IT READS, "ON TERMINATION, ALL OBLIGATIONS WHICH ARE

3    STILL EXECUTORY ON BOTH SIDES ARE DISCHARGED, BUT ANY RIGHT

4    BASED ON PRIOR BREACH OR PERFORMANCE SURVIVES."

5         AND THE PROVISION IN THE CONTRACT THAT POYNT WOULD OWN ALL

6    IP, THAT WAS AT ANY TIME A PROVISION THAT WAS BASED ON SOME

7    KIND OF FUTURE PERFORMANCE THAT THERE WAS GOING TO BE SOME TASK

8    THAT POYNT WOULD HAVE TO PERFORM BEFORE THAT BECAME PART OF ONE

9    OF ITS RIGHTS.  IT WAS BAKED IN FROM THE VERY BEGINNING.

10        AND SO IT'S NOT THE KIND OF THING THAT GETS CANCELLED OUT

11   BY A TERMINATION.  I THINK THAT WHEN YOU TAKE INNOWI'S POSITION

12   AND LOOK AT IT PRACTICALLY, WHAT THEY ARE ARGUING IS THAT THEY

13   COULD HAVE FILED A PATENT APPLICATION THE VERY NEXT DAY

14   RECITING EVERYTHING THAT WE HAD WORKED ON, AND BECAUSE THE

15   TERMINATION HAD OCCURRED THE DAY BEFORE, IT WOULDN'T BE A

16   BREACH.

17        I MEAN, AS I UNDERSTAND THE POSITION, THAT WOULD BE THE

18   LOGICAL EXTREME.

19             THE COURT:  WELL, YOU KNOW, AT THE PLEADING STAGE,

20   I'M GOING TO AGREE WITH YOU ON THIS POINT.  HOW IT WILL PLAY

21   OUT IS A WHOLE DIFFERENT MATTER BECAUSE, REALLY, WE ARE GOING

22   TO HAVE TO HAVE EVIDENCE ON WHAT WAS THE STATE OF THE PROJECT

23   AT TERMINATION, AND WHAT IS THE TECHNOLOGY THAT INNOWI TOOK AND

24   USED.

25        SO I CAN'T TELL YET, BUT I AGREE WITH YOU, I'M NOT GOING

1    TO MAKE THAT A PLEADING BAR FOR YOU, I DON'T SEE THAT BRIGHT

2    LINE AT THE PLEADING STAGE.  MAYBE I THINK THE EVIDENCE MAY, I

3    DON'T KNOW WHICH WAY THE EVIDENCE WILL COME OUT, AND IT WILL

4    INFORM US.

5         OKAY.  ARE THERE ANY OTHER -- AND I'M JUST GOING TO POINT

6    OUT AS A -- I'M GOING TO ASK YOU TO TAKE A LOOK AT MY NEW

7    STANDING ORDERS, AND I NO LONGER ALLOW SINGLE-SPACED FOOTNOTES,

8    THEY NEED TO BE DOUBLE-SPACED, 12 POINT TYPE.  I WOULD GREATLY

9    APPRECIATE IT IF YOU WOULD MAKE A NOTE ON THAT.

10        AND I NEVER READ FOOTNOTES THAT ARE SUBSTANTIVE AND HAVE

11   ADDITIONAL ARGUMENT, SUCH AS SOME OF THESE DO.  IF IT'S

12   IMPORTANT, PUT IT IN THE TEXT.

13        AND I THINK YOU SHOULD GENERALLY IMAGINE THAT FOOTNOTES

14   ARE AN AFTERTHOUGHT AND CAN BE DISPOSED OF.  AND SO I DISPOSED

15   OF ALL OF THEM.  SO ANY OF THOSE ARGUMENTS, I DIDN'T CONSIDER.

16   BUT JUST IN THE FUTURE, I GREATLY APPRECIATE THAT.

17        I WILL HAVE A WRITTEN ORDER.  I GUESS THE QUESTION IS IN

18   THE LAST CASE I MADE MY RULING FROM THE BENCH AND I WILL PUT

19   OUT A VERY SHORT ORDER.  IS THAT ALL YOU NEED HERE IS A VERY

20   SHORT ORDER SUMMARIZING WHAT WE'VE TALKED ABOUT?

21        MR. MELEHANI:  YEAH, I THINK SO.

22        TO THE EXTENT THERE COULD BE SOME ELABORATION ON, I

23   SUPPOSE THE DELTA BETWEEN WHAT YOU DEEM TO BE INSUFFICIENT

24   ABOUT, FOR EXAMPLE, THE ALTER EGO CLAIM, AND WHAT WE BELIEVE

25   SUFFICIENT, THAT WOULD BE HELPFUL.

1          THE COURT:  RIGHT.

2          SO THAT'S ALWAYS AN INTERESTING THING.  I CAN'T TELL YOU

3     WHAT YOU NEED TO PLEAD.  I CAN GET OUT THE PLEADING STANDARD

4     FOR ALTER EGO, AND WE CAN CERTAINLY DO THAT.

5          AND SO THEN -- AND HOW MUCH TIME DO YOU WANT FOR

6     AMENDMENT?

7               MR. MELEHANI:  I THINK 30 DAYS IS SUFFICIENT.

8               THE COURT:  ANY OBJECTION TO THAT?

9               MR. DAHLIN:  NO OBJECTIONS.

10              THE COURT:  OKAY.  WELL, I WILL CERTAINLY GIVE YOU

11    30 DAYS LEAVE TO AMEND.

12              MR. MELEHANI:  AND I MEANT TO SAY THIS EARLIER,

13    CLEMENT ROBERTS SAID HE WAS GOING TO BE PRESENT AT THE CMC.  HE

14    GOT KIND OF SICK, SO HE APOLOGIZES.

15              THE COURT:  WELL, HE NEEDN'T WORRY BECAUSE HE SENT

16    VERY ABLE ATTORNEYS.  SO THANK YOU FOR ALL OF THAT.

17         ALL RIGHT.  THANK YOU BOTH.  EXCELLENT ARGUMENT.  I REALLY

18    APPRECIATE THE WORK YOU PUT INTO IT.

19              MR. MELEHANI:  THANK YOU, YOUR HONOR.

20              MR. DAHLIN:  THANK YOU, YOUR HONOR.

21         (THE PROCEEDINGS WERE CONCLUDED AT 9:42 A.M.)

22

23

24

25

1

2

3

4                        **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 7/5/19